18414

The STATE, Respondent, v. Hershel Edgar CAIN, Appellant

(144 S. E. (2d) 905)

*Messrs. J. Pat Miley* and *Howard G. Pettit, Jr.,* of Walhalla, *for Appellant,*

*William H. Ballenger, Esq., Solicitor,* of Walhalla, *for Respondent,*

November 1, 1965.

Moss, Justice.

Hershell Edgar Cain, the appellant herein, was tried at the 1965 Spring Term of the Court of General Sessions for Oconee County upon an indictment charging him with the murder of Harold Williams, the alleged offense having occurred on February 1, 1964. He was found guilty of murder as charged and sentenced to death by electrocution. Section 16-51 and 52 of the Code. This appeal followed.

It appears from the record that the appellant was without employed counsel and two able and competent attorneys of Oconee County were appointed to represent him. These attorneys have prosecuted this appeal upon seven exceptions. They ask that in view of the fact that this is a capital case that we carefully consider the entire record for the purpose of determining whether all of the rights of the appellant were protected on his trial. In a capital case it is our duty *in favorem vitae* to scrutinize the entire record to determine whether there were any errors in the trial below affecting the substantial rights of the appellant, even though such errors may not be sufficiently covered by the exceptions.

It appears from the testimony that on February 1, 1964, at approximately 8:30 P. M., that Harold Williams, the owner and operator of a grocery store and filling station, located on the Highlands Highway about two miles north of the town of Walhalla, was found lying on the floor of his store, dead of a pistol bullet wound in his chest. The appellant was arrested on the same day and a warrant was issued charging him with murdering the said Harold Williams.

The record shows that on February 3, 1964, the appellant was taken by C. L. Smith, a deputy sheriff of Oconee County, to the headquarters of the South Carolina Law Enforcement Division in Columbia, South Carolina. This officer testified as to a confession made by the appellant that he shot the said Harold Williams. He said this confession was made freely and voluntarily by the appellant after he was fully advised of all of his rights, including his right to counsel. This officer testified that the appellant said that he didn't care for an attorney and that he was willing to discuss the matter freely and voluntarily. When the State offered the confession of the appellant in evidence, the trial Judge then excused the jury, and in the absence thereof, heard the testimony of the officer concerning the circumstances surrounding the taking of the confession. This officer was fully cross examined by the attorneys for the appellant. It appears from the record that at the time the confession was admitted in evidence, the sole testimony before the trial Judge was that such confession had been freely and voluntarily made by the appellant. There was no testimony to the contrary. The procedure outlined in *State v. Sanders,* 227 S. C. 287, 87 S. E. (2d) 826, and *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657, had been followed, except the appellant had not availed himself, nor was he required to do so, of the opportunity through his own testimony or that of other witnesses, to contradict the *prima facie* showing made by the State as to the voluntariness of the confession.

The record shows that the appellant, who was then twenty-five years of age, was admitted to the State Hospital in Columbia, South Carolina, on October 23, 1963, and his mental condition was diagnosed as schizophrenic reaction of the paranoid type. The appellant was released on a trial basis from said hospital on November 22, 1963, at which time he appeared to be in a good state of remission. He was again admitted to the State Hospital on February 8, 1964, and remained a patient in said hospital until released on December 8, 1964.

The State offered testimony that the appellant on February 1, 1964, was normal in every respect and there was nothing unusual in his appearance or conduct. This testimony was received without objection. Under our decisions, it is proper for lay witnesses to express an opinion as to whether a person was insane. *State v. Stockman,* 82 S. C. 388, 64 S. E. 595; *State v. King,* 222 S. C. 108, 71 S. E. (2d) 793; *State v. Keller,* 224 S. C. 257, 78 S. E. (2d) 373, and *State v. Sharpe,* 239 S. C. 258, 122 S. E. (2d) 622. A psychiatrist of the South Carolina State Hospital testified on behalf of the appellant and gave as his opinion that he was not capable of knowing right from wrong on February 1, 1964. This witness admitted on cross examination that it was possible that the appellant knew, on the date in question, right from wrong, legally and morally. He further stated, when told on cross examination as to the acts and doings of the appellant on the date in question, that such "are the factors that all sane people have".

The appellant denied any knowledge of his shooting Harold Williams. He said he did not remember going to the headquarters of the South Carolina Law Enforcement Division and making the confession to which we have heretofore referred. He testified that he did not remember being arrested on February 1, 1964, and he had no recollection of anything that took place until he had been in the State Hospital, following the shooting, some "several days or weeks". The appellant did recall some of his activities on the morning of February 1, 1964. He admitted borrowing a pistol from a neighbor and doing some target practice with it but, thereafter, he came back to his house and took some medicine for his headache and, after that, "I don't know where I went or what I did". The testimony is conclusive that the gun used in the shooting of Harold Williams was the one borrowed by the appellant.

It is the contention of the appellant that the court should have excluded from the evidence the statement or confession signed by the appellant because the appellant, at the time of

the making of said confession, was a suspect, was under arrest, and was not provided with counsel; and that at the time of the making of said confession, the appellant was disoriented, having been a patient in the State Hospital prior to the alleged confession and again within five days after making such confession.

A confession is not admissible in evidence unless it ▉ is freely and voluntarily made. It necessarily follows that the burden rests upon the State to show that it was voluntary and there is no presumption of law that it was. The mere fact that a confession is made while the accused is in the custody of an officer does not render it inadmissible. However, the conduct of the officer obtaining the confession will be rigidly scrutinized and the fact that it is made while the accused is under arrest is a circumstance, along with other facts and circumstances, to be taken into consideration by the jury in determining whether the confession was freely and voluntarily given. *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657.

At the time the confession of the appellant was offered and admitted into evidence, even though the ▉ confession was taken while the appellant was in custody, all of the evidence showed that the said confession, as made, was a free and voluntary one, and there was no evidence to contradict the *prima facie* showing made by the State. *State v. Sharpe,* 239 S. C. 258, 122 S. E. (2d) 622. The lack of mental capacity is an important factor to be considered with other factors in determining whether in fact, a purported confession was voluntary. *Blackburn v. State of Alabama,* 361 U. S. 199, 80 S. Ct. 274, 4 L. Ed. (2d) 242. The appellant had the right to introduce evidence of his insanity at the time of his confession for the purpose of impairing or destroying its effect and it was for the jury to determine what weight should be accorded thereto. We think the confession was admissible in evidence.

A confession is not ordinarily inadmissible on the ground of accused's alleged insanity where his sanity is a primary issue in the case. *People v. Moor,* 355 Ill. 393, 189 N. E. 318. The burden of proof is on an accused pleading insanity to prove his legal incapacity to confess the crime. *Hinson v. State,* 152 Ga. 243, 109 S. E. 661.

The record in this case shows that the trial Judge failed to give any instructions whatsoever as to the rules governing confessions. We think this was prejudicial error. The question of whether the appellant was mentally capable of making a confession and understood the contents of his statement and freely and voluntarily executed it should have been submitted to the jury under appropriate instructions. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130, and *State v. Clinkscales,* 231 S. C. 650, 99 S. E. (2d) 663. We quote from the last cited case:

"Although all the evidence may be to the effect that a confession made while under arrest was a voluntary one, the jury may not be so convinced; and it is the jury who, in the final analysis, must determine the factual issue of voluntariness. *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23; *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130. Cf. *State v. Harris,* 212 S. C. 124, 46 S. E. (2d) 682. Similarly, even though a jury accepts a written confession as having been voluntarily made, it is not thereby bound to accept every statement contained in it as true; for it is the sole judge of its credibility, and may believe it all, or in part, or not at all. It is unreasonable to assume that these matters are within the knowledge of the average juror; he should be informed of them by the Court. Whether such instruction would have altered the verdict in this case is a matter upon which we need not speculate; since life is at stake the case should be remanded, so that upon its retrial the jury may be instructed as to their power, as sole judges of the facts to determine whether or not, under the evidence, the confession was voluntary, and to what extent they will give it credence."

We think that in all fairness to the trial Judge it should be stated that he was not requested to instruct the jury on the subject of confessions. However, under the well recognized practice of this Court, where the death penalty is involved, these omissions on the part of counsel will not be held to waive the rights of the appellant.

The only other questions raised by the exceptions relate to matters that will not likely arise on another trial and need not be determined.

We take this opportunity of acknowledging our appreciation of the services rendered without compensation by counsel for the appellant. They have conscientiously and ably discharged their duties.

The judgment of the lower Court is reversed and this case remanded for a new trial.

Reversed and remanded.

TAYLOR, C. J., and LEWIS and BRAILSFORD, JJ., concur.

BUSSEY, J., did not participate.