19882

The STATE, Respondent, v. Claude CALLAHAN, Appellant

(208 S. E. (2d) 284)

*P. Lewis Pitts, Jr., Esq.,* of Columbia, *for Appellant,*

Messrs. *Daniel R. McLeod, Atty. Gen., Robert M. Ariail, Asst. Atty. Gen., and John W. McIntosh, Asst. Sol.,* of Columbia, *for Respondent,*

Aug. 28, 1974.

LITTLEJOHN, Justice:

The defendant Claude Callahan was tried and convicted upon an indictment which charged him with the offenses of burglary, rape, and robbery. He has appealed from his con-

viction by a jury of all three charges. In the appeal he has submitted three issues; the first, which related to the removal of a detainer, has been abandoned.

Early in the morning of July 20, 1972, a man broke into the apartment of the chief prosecuting witness, raped her, and upon departure took her purse.

On Saturday, September 23, 1972, the defendant was arrested on a warrant charging him with an unrelated burglary.

While in the custody of Captain of Detectives Snipes, of the Columbia Police Department, it is apparent that he came to suspect that the defendant might be connected with the offenses of which he has been convicted in this case. After an investigation was made, formal charges were entered, resulting in the trial which brings about this appeal.

The two questions before us relate to a confession which the trial judge admitted in evidence.

There is a sharp conflict in the evidence as to what occurred at the police station on Saturday, the day of the arrest.

It is the testimony of Captain Snipes that he advised the defendant of his rights as required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966). He quotes the defendant as saying, "I know my rights, I want a lawyer." Captain Snipes then avers that he refrained from questioning him about the case and called an attorney, the public defender. On Sunday morning Attorney McDougall, of the public defender's office, came to the jail where the defendant was placed in a lineup. Thereafter, with Detective Cannon, the defendant, and Captain Snipes present, the Captain advised the defendant of his rights again and questioned him in the presence of Attorney McDougall. At the time the defendant gave a confession, the admissibility of which at the trial is now in question. Captain Snipes testified further that, with the permission of the attorney

he went with the defendant to the scene of the crimes where the defendant further detailed the happenings to which he had confessed.

On the other hand, it is the testimony of the defendant that Captain Snipes interrogated him on Saturday without advising him of his *Miranda* rights and without his signing any waiver form. He further says that he was convinced that Captain Snipes would help him get a low bond if he fabricated an outlandish story that he raped the prosecuting witness in this case and several other women. The defendant says that he made his admissions to Captain Snipes or some other detective prior to the arrival of Mr. McDougall and before he had any conference with his attorney, and further that he only repeated on Sunday what he had said on Saturday.

Corroborating to a degree the defendant's testimony, Mr. McDougall testified that when he arrived at police headquarters Sunday morning, September 24, he was informed by some detective that the defendant had admitted being involved in several rape cases. Based on this conversation, Mr. McDougall says that he fully believed that the defendant had been interrogated prior to his arrival and advised him not to repeat (on Sunday morning) more than he had already told them the day before.

Defendant argues that the trial judge erred in refusing to let defendant's witness, Dr. Forsthoefel, testify more in detail before the jury as to the mental capacity of the defendant as it may affect the voluntariness of the Sunday confession.

In the trial of the case, when the State proposed to offer the Sunday confession into evidence, the trial judge held an evidentiary hearing in the absence of the jury. After the State submitted its evidence tending to prove that the confession was voluntary, the defendant called Dr. Frank Forsthoefel, a psychiatrist, who had seen the defendant on two occasions for the purpose of diagnosis. He testified that he

had diagnosed the defendant as "mental retardation moderate." He testified somewhat at length as to his ability to think and reason under stress. He said that the defendant "when subjected to even mild stress would become very labile, excitable and disorganized in his thinking and upset." He did not testify that the defendant did not know legal right from legal wrong.

At the end of the evidentiary hearing the judge found, "that the [Sunday] confession was freely and voluntarily made after the defendant had been accorded all of his Constitutional rights." Under our procedure whereby the jury is also permitted to pass upon the voluntariness of a confession, it was then in order to allow the same witnesses to submit their testimony in the presence of the jury.

After the State had again submitted its witnesses on the voluntariness issue, and while counsel for the defendant was again presenting his witnesses to the *contra,* Dr. Forsthoefel was again called to the stand and testified. He said that his diagnosis was that the defendant "is moderate mental retardation, I. Q. range of 55 to 65 at the most."

The record then reflects the following:

"Q. Do you have an opinion as to his ability to think or reason under stress?

"A. Yes, I do have an opinion."

The solicitor objected to this question and the judge sustained the objection. Later, defense counsel asked this question:

"Q. Okay, Doctor, do you have an opinion as to his quality of thinking?

"A. His quality of thinking . . ."

The trial judge interrupted and did not permit the witness to continue to answer.

The question we must answer is whether the defendant was prejudiced by denial of the right to further pursue the question of mental capacity.

A confession is not admissible unless voluntary, and it was for the jury to say in the last analysis whether the confession was or was not voluntary. In *State v. Cain,* 246 S. C. 536, 144 S. E. (2d) 905 (1965), this Court held, "The lack of mental capacity is an important factor to be considered with other factors in determining whether, in fact, a purported confession was voluntary." Accordingly, the defendant was entitled to submit evidence of the psychiatrist touching on the defendant's mental capacity and it would have been appropriate to allow both questions quoted hereinabove.

We cannot say, however, that exclusion of the testimony was prejudicial, requiring a new trial, in the light of other evidence clearly establishing low mentality on the part of the defendant. The doctor was permitted in the presence of the jury to testify as follows:

"Q. Dr. Forsthoefel, given a hypothetical question in which Mr. Callahan is arrested and taken to the police station and interrogated without the presence of an attorney, do you have an opinion on his ability to voluntarily, knowingly and intelligently waive any of his rights, Constitutional rights?

"A. I feel that subject to stress Mr. Callahan's thinking would be impaired. I feel that there's even some evidence here that his thinking has been impaired under stress. I think Mr. Callahan has made and could make a number of inconsistent remarks whereby people would understand him one way and understand him inaccurately."

The doctor has already testified that the defendant was "mental retardation moderate" and had explained to the jury, "Well, mental retardation has many symptoms. It's basically a syndrome, a disorder where there is no known organic damage to the brain but, however, there are symptoms of brain disturbance that would affect the knowledge, capacity to know, the capacity to feel, capacity to integrate one's thoughts and one's feelings, the capacity to understand,

make proper judgments, to lead an effective and functional life. These would be impaired in retardation."

It is abundantly clear from the whole of the testimony that the defendant was of low mental capacity, even though insanity was not asserted as a ground of defense. The record reflects the following low-mentality testimony on direct examination on behalf of the defendant himself:

"Q. Talk up loud now. What kind of questions did they ask?

"A. After that then they come up some rape charges and so if I told them I didn't do it they wouldn't agree with me.

"Q. They wouldn't do what?

"A. If I told them the truth they wouldn't agree with me.

"Q. Believe you?

"A. No, sir, they wouldn't believe me. If I told a lie on my own self they agree to that better. That why I did that. I ain't know what gonna happen to me.

"Q. Did you tell them the truth?

"A. No, sir.

"Q. What did you tell them?

"A. I tell them I raped all, sex with men . . . anyhow men and women, things like that.

"Q. Okay. Did you tell them you raped Annette Watt?

"A. No, sir.

"Q. Did you know Annette Watt?

"A. No, sir.

"Q. And why did you tell Captain Snipes that you raped women?

"A. That's somethin' I just make up.

"Q. Why did you make it up?

"A. Make them go light.

"Q. Make them go light on you. Make who go light on you?

"A. Police."

To exclude the testimony of Dr. Forsthoefel was inconsistent with our reasoning in *Cain,* but we think that the jury was fully apprised of the fact that the defendant was of very low mentality short of insanity. Accordingly, we answer the first question adverse to the defendant.

By the last question submitted the defendant contends that the trial judge erred in refusing to suppress the Sunday confession because it was the product of an illegal Saturday confession. It would appear that the trial judge ignored the alleged Saturday confession inasmuch as the State denied its existence and did not rely upon the same.

The ruling of the judge, holding the Sunday confession to be free and voluntary and admitting it in evidence, made after a full factual hearing in the absence of the jury, was general in nature. The ultimate issue was the voluntariness of the Sunday confession. It was the duty of the judge, in the first instance, to resolve the factual issues presented before the confession could be lawfully admitted in evidence.

There was evidence which if believed created the inference that a confession was taken on Saturday without *Miranda* warnings first having been given. Defendant argues that the Sunday confession was merely a repetition of statements made on Saturday. It was the duty of the judge to determine whether a Saturday confession had, in fact, been given. If none was given, it cannot be said that the Sunday confession was tainted. On the other hand, if a Saturday confession was in fact given, it became the duty of the judge to determine whether it tainted the Sunday confession and, if so, whether the taint was removed. *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. (2d) 441 (1963).

We find that the defendant has not had a reliable determination by the judge of the issue of voluntariness to which he is entitled under the case of *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908, 1 A. L. R. (3d) 1205. The finding was too general to

form the basis of a proper review by this Court and, accordingly, the case must be remanded for further and specific findings upon the controverted issues related to the admissibility of the confession.

This Court had before it a somewhat similar situation in *State v. Cannon*, 248 S. C. 506, 151 S. E. (2d) 752 (1966), *after remand* 250 S. C. 437, 158 S. E. (2d) 357 (1967). The State had procured certain evidence with the use of an illegal search warrant. The defendant confessed to the crime. It was the contention of the defendant that the confession was tainted by the fact that police officers had in the confession room the articles procured illegally with the search warrant. The trial judge ruled that the confession was voluntary without making specific findings relative to whether it was tainted by the use of articles (exhibits) illegally procured. This Court remanded for specific findings and held that general findings of voluntariness were not sufficient.

Accordingly, this case is remanded to the Court of General Sessions for Richland County for a hearing and determination by a judge of the issues referred to hereinabove. The court may rely upon evidence already taken and both the State and defendant shall have the right to introduce additional evidence on the issue. If it is determined that the Sunday confession was voluntary, it follows that the lower court should reaffirm the conviction and sentence. If it is determined that the Sunday confession was not voluntary, an order reversing the conviction and granting a new trial shall be entered.

Remanded.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.