## 20082

In re Wyman WILLIAMS and Gregory Alvin Jenkins, children under the age of seventeen years. Gregory Alvin JENKINS, Appellant, v. STATE of South Carolina, Respondent.

(217 S. E. (2d) 719)

*William T. Toal, Esq.,* of Columbia, *for Appellant,* cites:

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph R. Barker* and *Sidney S. Riggs, III, Asst. Attys. Gen.,* of Columbia, *for Respondent,* cite:

August 18, 1975.

LEWIS, Justice:

Appellant, a minor, was arrested and charged on April 15, 1974, with delinquency based upon charges of breaking and entering and theft from a place of business in Columbia, South Carolina. He was subsequently found guilty of the charges, adjudged a delinquent by the Family Court of Richland County, and placed on probation for twelve (12) months. A statement signed by appellant following his arrest was introduced into evidence over his objection. The admissibility of that statement is the sole issue in this appeal.

Appellant, age 15, and his cousin Wyman Williams, age 14, spent the night of April 14, 1974 at the home of their grandmother. They were awakened at about 3:00 a. m. on Monday, April 15, 1974, by appellant's father who carried them with him to the premises of Pearce-Young-Angel Co., a wholsesale food distributor. They entered the premises where appellant and his cousin were shortly thereafter arrested by an officer of the Richland County Sheriff's Department, who was investigating a report from the night manager of the business that a man was in the meat freezer.

When the officer approached and someone shouted: "Police," appellant and his cousin ran but were unable to escape. The officer testified that they stopped after he fired a warning shot. Appellant testified that he ran only after a shot was fired and not because he thought he was doing anything illegal.

At the time of appellant's arrest, meat of the approximate value of $1100.00 had been removed from the freezer and placed on the loading platform.

Appellant was carried to the premises by his father and it is clearly inferable that the father escaped when the officers arrived. Therefore, the conclusion is inescapable that the father knew of the plight of his son without being notified by the officers. Following his arrest about 3:30 a. m., appellant was taken to the Richland County jail and held until about 9:00 a. m. when he was put under the custody of a juvenile investigator of the Sheriff's Department. Shortly thereafter this investigator read to him the *Miranda* warnings, after which he signed a waiver form. Appellant then made an inculpatory statement which was reduced to writing on a form containing the requirements of *Miranda,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, and signed. Appellant and his co-defendant testified that the statement was signed because he was told that he could go home when he did so.

The statement signed by appellant was admitted into evidence, over objection. The exceptions challenge the admissibility of the statement upon the grounds (1) that the statement was made while appellant was in illegal custody in violation of Code (Supplement) Section 15-1095.17 and (2), since appellant was a juvenile, he could not make an intelligent waiver of his constitutional right against self-incrimination in the absence of a parent or a friendly adult.

Appellat's first contention is that his statement was made during a period of illegal custody because his parents were not notified of his arrest "as soon as

possible" as required by Code Section 15-1095.17. This section is a part of the Family Code Act and provides that when a child is taken into custody for violation of any law the "officers shall notify the parent, guardian or custodian of the child as soon as possible."

Appellant and his cousin were taken into custody about 3:30 a. m. on the premises of Pearce-Young-Angel Company where the father of appellant was also present but apparently escaped. Since the father was aware of the plight of his son, we assume that the claim of failure to notify the parents has reference to appellant's mother. While the officers could not specifically recall whether the parents were notified that night, appellant's brief concedes that the mother of appellant appeared at the jail "around 8 or 9 a. m.," about five (5) hours after the arrest, to see about her son. She evidently received information of the arrest at some time prior to her appearance at the jail. It is most significant that neither the father nor mother of appellant, witnesses peculiarly available to him, were called to testify that they had received no notice of the arrest of their son.

In view of the presence of the father on the premises when appellant was arrested and the appearance of the mother at the jail within about five (5) hours of the arrest which occurred in the early morning hours (about 3:30 a. m.), we conclude that the record fails to sustain the claim that the parents of appellant were not notified of his arrest "as soon as possible" within the meaning of Section 15-1095.17.

Assuming however that appellant was held in illegal custody, such fact alone does not render his inculpatory statement inadmissible. We have held that every statement or confession made by a person in illegal custody is not involuntary and inadmissible, "but the facts and circumstances surrounding such arrest and the in-custody statement should be considered in determining whether the statement is voluntary and admissible. Voluntariness remains as

the test of admissibility." *State v. Funchess,* 255 S. C. 385, 179 S. E. (2d) 25; *State v. Bishop,* 256 S. C. 158, 181 S. E. (2d) 477.

Under the next contention of appellant, we are asked to adopt a rule under which any inculpatory statement obtained from a minor in the absence of counsel, parent or other friendly adult would be *per se* inadmissible regardless of the circumstances surrounding the making of such statement. This we decline to, do.

It is conceded in this case that the purported waiver of appellant's constitutional right against self-incrimination and the subsequent statements were made in the absence of parents or other friendly adult.

While the age of the individual is a factor to be taken into consideration, the admissibility of a statement or confession of a minor depends upon its voluntariness, to be determined from the totality of the circumstances under which it is made. Recognizing the "totality of circumstances" test approved in *Haley v. Ohio,* 332 U. S. 596, 68 S. Ct. 302, 92 L. Ed. 224, and *Gallegos v. Colorado,* 370 U. S. 49, 82 S. Ct. 1209, 8 L. Ed. (2d) 325, the correct general rule has been thus stated:

". . . a minor has the capacity to make a voluntary confession, even of capital offenses, without the presence or consent of counsel or other responsible adult, and the admissibility of such a confession depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement." *People v. Lara,* 67 Cal. (2d) 365, 62 Cal. Rptr. 586, 432 P. (2d) 202, 215:

The question of whether a minor can knowingly waive his constitutional rights is analogous to the question of whether the confession of a mentally subnormal person is admissible. The inquiry in both cases

is the ability or capacity to comprehend the meaning and effect of the waiver or statement. We have consistently held that mental deficiency alone is not sufficient to render a confession involuntary but that it is a factor to be considered along with all of the other attendant facts and circumstances in determining the voluntariness of the confession. *State v. Cain,* 246 S. C. 536, 144 S. E. (2d) 905; *State v. Callahan,* 263 S. C. 35, 208 S. E. (2d) 284.

The objections to the admissibility of the statement because of the age of appellant and the fact that the statement was made while he was allegedly in illegal custody were properly overruled.

However, we are not satisfied that the determination in the lower court of the issue of voluntariness was made upon a full inquiry into the facts.

Although the record is not very clear on the question, it is inferable that the statement from appellant was not taken until after the mother appeared at the jail about 8:00 or 9:00 a. m., and the release of appellant had been refused. This conclusion may be drawn from the fact that the officer who took the statement did not come to work until 9:00 a. m. The statement therefore would have been signed after that hour, which was after the mother had made inquiry about her son between 8:00 and 9:00 a. m. There was testimony that she was told that she could not obtain the release of appellant at that time but would have to return later. Appellant was subsequently released about 4 p. m. or about thirteen (13) hours after his arrest. In addition, when the officer who took the statement was asked if he had used "any coercion at all to obtain these statements," the court admonished: "No need to go into that. I've already ruled on that."

The issue of the voluntariness of appellant's statement should not be resolved upon the cursory inquiry revealed by this record. Ordinarily, remand would be limited to a further determination of this issue but, in view of the nature of the

proceedings in Family Court, we think it proper to reverse the judgment under appeal and remand for a new trial, at which time a full inquiry can be had into the entire matter and the issues determined in the light of the facts so developed.

Reversed and remanded for a new trial.

Moss, C. J., LITTLEJOHN and NESS, JJ., and BRAILSFORD, Acting Associate Justice, concur.