**William Lee PHILLIPS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–519.**

Court of Criminal Appeals of Oklahoma.

Sept. 7, 1982.

---

David Miller, Asst. Public Defender, Oklahoma County, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

William Lee Phillips, appellant, was convicted in the District Court of Oklahoma County of Manslaughter in the First Degree, After Former Conviction of a Felony. He was sentenced to thirty (30) years' imprisonment.

On the evening of October 3, 1980, Ronald Plummer and Richard Lee observed a man standing over a woman near the 200 block of North Lincoln Boulevard, in Okla-

homa City. It appeared that the man was attempting to carry the woman up a small hill. When Lee asked the man what he was doing, he replied, "It's my wife, and she's drunk. I'm trying to get her home." The woman was dressed only in a T-shirt and underwear, and blood was visible on her face. The boys quickly left the scene and notified the police. Both Plummer and Lee identified appellant in court.

An Oklahoma City police officer sent to the scene discovered a woman lying in a drainage ditch. She was bleeding, but still alive, and an ambulance was called. She later died at the hospital after being identified as Marilyn Hicks.

Officer Nathan Pyle, a canine handler dispatched to the scene, testified that his dog apprehended the appellant approximately two hundred yards from the woman's body. Among physical evidence collected at the scene was a pair of women's slacks, a pair of shower shoes, a man's right shoe and a few strands of human hair. Later at the police station detectives removed the slacks and the left shoe from appellant.

Anne Reed, a forensic chemist from the Oklahoma State Bureau of Investigation, tested this physical evidence. Human blood of unknown blood group was found on both shoes, hair samples from the victim were comparable to strands of hair found at the scene of the crime, and the appellant's slacks contained human blood of blood group "O". The victim's blood-type was "O" as well.

Carrie Phillips, appellant's mother, was the only witness presented by the defense. She stated that her son had attended special education classes for several years and had never been able to retain a job.

I.

Appellant insists in his initial assignment of error that the trial court erred in finding him competent to stand trial. The trial court conducted a hearing on the issue of competency upon motion by defense counsel. The appellant offered his own testimony and that of an attorney, who stated Phillips was incapable of assisting in the preparation of his defense and understanding the nature and scope of the proceedings against him. No medical testimony was presented at this hearing. The State relied upon a previous court order, dated January 13, 1981, and a letter from a forensic psychiatrist. The court order, which found the appellant competent, was issued subsequent to his mental observation and discharge from Central State Hospital. The psychiatrist's letter was not made a part of the record.

■ Title 22 O.S.1981, § 1162, requires that a jury be impaneled when information is called for trial, or when the defendant is sentenced, if "a doubt arises" as to his present sanity. The doubt referred to in the statute must arise in the mind of the trial judge after an evaluation of the facts, source of the information and motive. *Beck v. State,* 626 P.2d 327 (Okl.Cr.1981).

■ It is well established that sanity is always presumed, and the burden of proving incompetency is on the person raising the issue. *Wimberli v. State,* 536 P.2d 945 (Okl.Cr.1975). Appellant testified at the competency hearing, and his testimony failed to persuade the trial court that he was insane. Occasionally the answers given by Phillips were not responsive to questions asked of him. However, he did know his address and place of birth, his mother's name and address and his past history of attending several schools in Oklahoma City, Tulsa, and Sand Springs. Phillips also knew his father was dead and that he was charged with Manslaughter. We do not believe that the evidence in the instant case was sufficient to create in the trial judge's mind a legal doubt of the appellant's present competency and, finding no abuse of discretion, such a ruling will not be disturbed on appeal. See *Beck v. State,* supra.

For the reasons stated, we find appellant's first assignment of error to be without merit.

II.

The appellant contends that a statement made at the scene of his arrest, and state-

ments made after he was placed in custody, were improperly admitted at trial.

■ Phillips made his first statement to the police after being apprehended by a police dog. Officer Pyle withdrew the dog and read Phillips his *Miranda* rights. Before Officer Pyle could ask him any questions, Phillips declared, "You will not be able to make a case on me, because I've got mental problems." As stated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the procedural safeguards promulgated by the United States Supreme Court only apply to questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the holding in *Miranda*. See *Summers v. State*, 574 P.2d 1067 (Okl.Cr. 1978). Appellant's initial statement not only was preceded by a proper warning of his Fifth Amendment rights, but was given voluntarily without any inducement from the police officer. The trial court correctly admitted this statement.

The appellant's second statement was given to Officer Lee while he was in the Oklahoma City jail and was again preceded by full *Miranda* warnings. Phillips was asked prior to interrogation whether in view of the warnings he wanted to make a statement. He answered in the affirmative and then admitted that he and Marilyn Hicks had been drinking together. He stated that on their way home an argument ensued between them. During this argument Ms. Hicks attempted to hit him; he retaliated with a series of blows and kicks to her face and chest.

Appellant's third statement was given to Officer Owens two days following his arrest. Phillips was also advised of his *Miranda* rights prior to making this statement, which was essentially a reiteration of the one given earlier to Officer Lee.

The interviewing officers testified that Phillips appeared to understand the *Miranda* warnings. Officer Lee stated that al-

though he could detect the odor of alcohol on Phillips, he did not believe Phillips was intoxicated at the interview which was held the day after the arrest. Additionally, Lee stated that appellant's speech and mannerisms were normal. Furthermore there was no coercion, nor inducements to confess, lengthy interrogation, or mistreatment.

■ The appellant implies that his level of intelligence or degree of intoxication prohibited him from executing a voluntary waiver of his right to remain silent. In determining whether a defendant's will was overborne in a particular case, the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation—will be considered. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 93 S.Ct. 2041, 2045, 36 L.Ed. 854 (1973). The Supreme Court recognizes low intelligence of the accused as one of *several* factors to be considered, and is not necessarily a single controlling criterion. *Schneckloth*, supra. (Emphasis ours.)

■ We therefore hold that unless an accused's degree of retardation is so great as to deprive him of the capacity to understand the meaning and effect of his confession, his deficient intelligence is but one factor to be considered within the totality of the circumstances in determining voluntariness and admissibility. See, *State v. Winfrey*, 221 N.W.2d 269 (Iowa 1974); see also, *In Re Williams*, 265 S.C. 295, 217 S.E.2d 719 (1975); *Commonwealth v. Daniels*, 366 Mass. 601, 321 N.E.2d 822 (1975). Proper inquiry then is whether the accused had the capacity to comprehend the meaning and effect of the waiver or statement. Cf. *Moles v. State*, 520 P.2d 822 (Okl.Cr. 1974) (dealing with accused's low emotional or mental stability).

■ Taking into account the entire record, we are of the opinion that there was sufficient evidence from which the trial court could conclude that all three statements were made freely and voluntarily, irrespective of whether Phillips may have been partially under the influence of alcohol or lacked the mental capacity of the aver-

age adult. See, *Walton v. State,* 594 P.2d 794 (Okl.Cr.1979).

Appellant also insists that due to his low mental capacity, it was incumbent upon the officers to make a special effort to make certain that he understood the warnings. The trial court, however, specifically found that Officer Lee in giving the *Miranda* warnings had taken his time and explained them to the appellant.

### III.

■ Appellant next argues that the trial court erred in refusing to allow defense counsel to ask the following questions to prospective jurors on voir dire examination:

Question No. 1:

Has any of you collectively or separately ever expressed the opinion, or have you remained mute when the opinion was expressed that the system itself is too laxed on those accused of crimes?

Question No. 2:

That the courts and jurors in this county do not impose severe enough sentences on those that are convicted?

Question No. 3:

·That the system and more particularly the institutions are not tough enough on those incarcerated?

The purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for either actual or implied bias and to permit the intelligent exercise of peremptory challenges. *Palmer v. State,* 532 P.2d 85 (Okl.Cr.1975). The manner and extent of the examination of prospective jurors rests largely in the sound discretion of the trial judge and, absent a clear case of abuse, the ruling of the trial court will not be disturbed. *McFatridge v. State,* 632 P.2d 1226 (Okl.Cr.1981).

■ In the instant case, appellant has cited no authority in support of his contention that it is an abuse of discretion for the trial court to disallow questions similar to those requested herein. Nor has appellant established he was prejudiced by the trial court's ruling. Therefore, appellant's third assignment of error is also without merit.

### IV.

Appellant also alleges the trial court erred in overruling his demurrer to the State's evidence. In advancing this argument appellant relies upon the mistaken assumption that his statements, and the fruits thereof, were improperly admitted at trial.

■ The controlling rule, stated in *Towry v. State,* 540 P.2d 597 (Okl.Cr.1975), is that the trial court should not direct a verdict where there is competent evidence tending to sustain the allegations of the information. However, once appellant presented evidence in his own defense, he waived the ruling on his demurrer to the State's evidence. The question of sufficiency must now be determined by an examination of the entire record. *Morrison v. State,* 628 P.2d 381 (Okl.Cr.1981).

■ We have already held that all statements made by appellant were properly admitted. However, independent of his confession, the State presented sufficient evidence to support the allegations in the information. Two eyewitnesses positively identified Phillips as the man they had seen attempting to drag the victim's body up a hill on October 3. Appellant tried to flee from the scene, and a police dog was required to apprehend him. He had human blood on his shoes, and the blood found on his trousers was of blood group "O", the same as that of the victim.

Therefore, we are compelled to hold that the evidence presented in this case was sufficient as to all elements. Where there is competent evidence in the record from which the jury could reasonably conclude that the appellant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Nichols v. State,* 564 P.2d 667 (Okl.Cr.1977).

### V.

■ Appellant lastly asserts that the sentence recommended by the jury and im-

posed by the trial court was excessive. The thirty-year sentence clearly lies within the statutory limits of 21 O.S.1981, § 715, and considering the nature of the offense, we cannot find that the punishment imposed is excessive.

The judgment and sentence is accordingly AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.