Donald Wayne STRUBE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. M–85–348.

Court of Criminal Appeals of Oklahoma.

July 2, 1987.

John Bates, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

### OPINION

PARKS, Judge:

The appellant, Donald Wayne Strube, was tried by jury and convicted of Assault and Battery [Count I] and Battery on a Police Officer [Counts II and III] in the District Court of Oklahoma County, Case No. CRM–84–3907. The jury set punishment at a $100 fine [Count I], a $500 fine [Count II], and a $500 fine [Count III]. Judgment and sentence were imposed in accordance with the jury's verdict. We affirm.

The charges arose from an altercation between two political factions in an alley behind the police station in Choctaw, Oklahoma. Late in the evening of August 24, 1984, during a local festival called Old Timers Day, a pickup was parked in the alley partially blocking it. A car driven by a Mrs. Carter was unable to pass, and the driver asked the appellant to move the pickup. The appellant, a city councilman who did not own the pickup or have possession or control of it, refused to move it. Mrs. Carter then walked to the police station and returned with two reserve police officers. The officers, discovering the identity of the party refusing to move the pickup, called for their supervisor. When the supervising officer, Major Carter, arrived, he discovered the driver of the car was his mother. Major Carter in turn radioed for a supervisor because of a potential conflict of interest. In response to Major Carter's call, the Chief of Police and Mayor Ron Briggs arrived. Additionally, reserve officer Carter, husband of the driver of the car and father of officer Major Carter, was present.

The Mayor and the Chief of Police talked to the appellant and two other councilmen, one of whom owned the pickup which was blocking the alley. A compromise was proposed by the Mayor in which Mrs. Carter would back her car out of the alley. Reserve officer Carter, who was standing directly behind the Mayor, responded that "If that's the way you're going to handle it, then you can take my badge and shove it up your ___." This remark started the fight. The appellant hit the Mayor in the head with his fist.

The appellant testified at trial that he felt surrounded and threatened by the crowd, that someone pushed him from behind, and that he accidentally hit the Mayor while waiving his arms to recover his balance. Other testimony, including testimony by the appellant's son, failed to corroborate that the appellant was pushed from behind. Further testimony revealed that the appellant tried to hit reserve officer Carter when the offending remark was made, missed, and hit the Mayor instead. Additionally, testimony was given that after the appellant was restrained by the Chief of Police and another officer, the appellant swung at the Mayor four more times.

As the appellant was being restrained by the Chief, the appellant's son grabbed the Chief. Major Carter in turn grabbed the

son and they fell to the ground. The only force applied by Major Carter to the appellant's son was a bear hug. The son threw Major Carter off, but was again restrained by a bear hug and arrested. The appellant then broke free of his restrainers, grabbed Major Carter by the uniform with one hand and repeatedly struck Major Carter with the other hand in the back of the head. After the appellant was pulled away from Major Carter, Sgt. Hlad started to lead the appellant's son away by loosely holding him by the elbow. The appellant broke free again and spun Sgt. Hlad around, punched him in the chest, and led his son away.

For his first assignment of error, the appellant asserts that the trial court erred in refusing to grant the appellant a full, fair and complete voir dire by preventing defense counsel from completing voir dire.

The trial judge initiated voir dire examination of the potential jurors and then turned voir dire over to the State. Upon completion of the State's examination of the six person jury, defense counsel began a lengthy and extensive examination of the jurors. Defense counsel's questioning was interrupted four times by the trial judge, once for injecting argument into voir dire, once for asking a hypothetical question, and twice for prying into the private life of a prospective juror. Counsel was repeatedly warned outside the hearing of the jury that if he did not stop asking improper questions and continued to abuse voir dire, the trial court would take voir dire away from defense counsel. After counsel asked the fourth improper question, voir dire was taken from him and the trial judge completed examining the jurors. The State then exercised one peremptory challenge and the defense exercised all three of their peremptories. No jurors were excused for cause. After each replacement juror was examined by the court, defense counsel renewed his request to individually examine the juror. Each request was denied by the court, but an opportunity was afforded to submit specific questions to be asked of the jurors.

The appellant raises a question of first impression. Neither the appellant nor the State offers any authority on point for this issue.

Rule Six of the Rules of the District Courts provides:

The judge shall initiate the voir dire examination of jurors by identifying the parties and their respective counsel. He may outline the nature of the case, the issues of fact and law to be tried, and may then put to the jurors any questions regarding their qualifications to serve as jurors in the cause on trial. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination. Counsel shall scrupulously guard against injecting any argument in their voir dire examination and shall refrain from asking a juror how he would decide hypothetical questions involving law or facts. Counsel shall avoid repetition, shall not call jurors by their first names or indulge in other familiarities with individual jurors, and shall be fair to the court and opposing counsel.

Title 12 O.S. 1981, Ch. 2, App., Rule 6. Rule Six applies equally to civil and criminal proceedings. *See Shipman v. State*, 639 P.2d 1248, 1251 (Okl.Cr.1982). Rule Six requires initiation of voir dire by the trial judge. The manner and extent of examination of prospective jurors rests in the sound discretion of the trial judge, and a ruling of the trial court will not be reversed on appeal absent a clear abuse of discretion. *Sherrick v. State*, 725 P.2d 1278, 1281 (Okl.Cr.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 935, 93 L.Ed.2d 986; *Brogie v. State*, 695 P.2d 538, 544 (Okl.Cr. 1985); *Jeffries v. State*, 679 P.2d 846, 850 (Okl.Cr.1984); *Nauni v. State*, 670 P.2d 126, 130 (Okl.Cr.1983); *Phillips v. State*, 650 P.2d 910, 914 (Okl.Cr.1982); *Shipman, supra* at 1251; *Grizzle v. State*, 559 P.2d 474, 479–80 (Okl.Cr.1977). The manner and extent of examination of jurors cannot be prescribed by any definite, unyielding rule, but rests in the sound discretion of the trial judge. *Stout v. State*, 726 P.2d 896, 897 (Okl.Cr.1986); *Stott v. State*, 538 P.2d 1061, 1063 (Okl.Cr.1975); *Gonzales v.*

*State,* 388 P.2d 312, 318 (Okl.Cr.1964); *Payne v. State,* 276 P.2d 784, 791 (Okl.Cr. 1954).

There are, however, countervailing principles applicable here. First, Rule Six requires that both the State and the defense be given "reasonable opportunity to supplement" the court's examination of jurors. Rule Six, as well as the ABA Standards Relating to Trial Courts, § 2.12 (1976) and the ABA Standards for Trial by Jury, § 15–2.4 (1978), make clear that participation by both the State and the defense in voir dire, at least in criminal proceedings, is a right. The purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for cause and to permit the intelligent use of peremptory challenges. *Phillips, supra* at 914. In the examination of jurors, wide latitude must be given the parties to enable them to obtain a jury free of outside influence, bias or personal interest. *Stott, supra* at 1063; *Gonzales, supra* at 318; *Payne, supra* at 791. Lastly, all doubts regarding juror impartiality must be resolved in favor of the accused, *Hawkins v. State,* 717 P.2d 1156, 1158 (Okl.Cr.1986); *Tibbetts v. State,* 698 P.2d 942, 946 (Okl.Cr. 1985); *Scrivener v. State,* 63 Okl.Cr. 418, 75 P.2d 1154, 1156–57 (1938), which rule applies equally to the trial court and to the Court of Criminal Appeals.

▮ Balancing the interests of the trial court's control over voir dire and the right of the defense to actively participate in voir dire, we find here that defense counsel repeatedly asked questions specifically prohibited by Rule Six; counsel was repeatedly warned that voir dire would be taken from him if he persisted in violating Rule 6; counsel was afforded the opportunity to submit specific questions to the court to be asked of the prospective jurors but refused to do so; and the trial court's examination of prospective jurors was thorough and scrupulously fair. Thus, we find no abuse of discretion by the trial judge requiring reversal of the conviction. Furthermore, the jury could have sentenced the appellant to six months imprisonment in the county jail but refused to do so, indicating no prejudice resulted from the trial court's refusal to allow the appellant to continue voir dire. Based upon the record presented in this case, we find the first assignment of error to be meritless.

For his second assignment of error, the appellant asserts that the trial court erred in refusing to give the appellant's requested instructions on self-defense and on defense of another.

The appellant offered three jury instructions concerning non-deadly use of force in self-defense, all three of which were taken verbatim from Oklahoma Uniform Jury Instructions (OUJI) Numbers OUJI–CR 742, 744 and 745. In lieu of using the OUJI, the trial judge composed his own jury instruction number 14.

It is within the sound discretion of the trial judge to accept or refuse requested instructions, and, absent a clear abuse of discretion, the trial court's judgment will not be reversed on appeal, provided the instructions given are considered in their entirety to be proper. *Nealy v. State,* 636 P.2d 378, 382 (Okl.Cr.1981); *Campbell v. State,* 636 P.2d 352, 357 (Okl.Cr.1981), *cert, denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479; *Pollard v. State,* 528 P.2d 1121, 1126 (Okl.Cr.1974). While it would have been better practice for the trial judge to use the OUJI instructions proposed by the appellant, after reviewing the instructions in their entirety, we find the instruction given was proper and did not prejudice the appellant.

Counts II and III involved the defense of another, not self-defense. The trial court properly refused to issue jury instructions on this defense.

Defense of another is a recognized defense in Oklahoma.

The law recognizes that a person is privileged to defend a third person from harm under the same conditions and by the same means as though under and by which he is privileged to defend himself, if he reasonably believes that the circumstances are such as to give the third person such a privilege of self-defense, his intervention is necessary for the protection of the third person, and the third

person is a member of his immediate family or a person whom he is under a legal or socially recognized duty to protect. 'One who goes to the aid of a relative or third peson acts at his own peril, and his right to defend the other is coextensive with the other's right to defend himself at the time.' (Citations omitted).

When an officer in making a lawful arrest uses more force or aggression than is reasonably necessary, the party so assaulted has the right of self-defense and may repel the attack with sufficient force to avert its threatened consequences, using no more force than is necessary.

*Carter v. State*, 507 P.2d 932, 934 (Okl.Cr. 1973) (citations omitted).

■ Here the appellant's son aggresively interfered with the police officers as they were attempting to prevent the appellant from striking the mayor again. The appellant's son was wrestled to the ground by Major Carter and was restrained through the use of a bear hug. No improper or unnecessary force was being applied to the appellant's son. Since only reasonably necessary force was applied to restrain the appellant's son, the son had no right of self-defense to this lawful use of force. Likewise, the appellant had no right of defense of another under these circumstances, and when the appellant repeatedly struck Major Carter in the back of his head, the appellant did so at his own risk.

Similarly, when the appellant's son was being led away by Officer Hlad, the only force applied was a loose grip on the son's arm. When the appellant spun Officer Hlad around to break his grip on the son's arm and struck Officer Hlad in the chest, the appellant did so at his own risk.

Since the appellant failed to establish the material elements of defense of another, other than the requirement that the third person be a member of the appellant's immediate family, it was not error for the trial court to refuse to issue instructions on this defense. This assignment of error is, therefore, without merit.

■ For his third assignment of error, the appellant asserts that the trial court improperly refused to sustain a demurrer to the evidence in Count I because insufficient evidence was presented to prove appellant's criminal intent to commit assault and battery upon Mayor Briggs.

A demurrer to the evidence is a motion for a directed verdict which admits for the sake of argument the facts which the State's evidence tends to prove. If there is any competent evidence reasonably supporting the allegations for the charge, the demurrer should be overruled. We have consistently held that where there is evidence from which the jury could conclude that the defendant was guilty as charged, this Court will not interfere with the verdict even though there is a sharp conflict in the evidence, since it is within the exclusive province of the jury to weigh the evidence and determine the facts. *Renfro v. State*, 607 P.2d 703, 705 (Okl.Cr.1980); *Clayton v. State*, 695 P.2d 3, 5–6 (Okl.Cr.1985); *Corley v. State*, 713 P.2d 12, 14 (Okl.Cr.1985); *Kyle v. State*, 722 P.2d 1218, 1219 (Okl.Cr. 1986); *Shipp v. State*, 725 P.2d 1274, 1275 (Okl.Cr.1986). We find that the trial court properly refused to sustain the demurrer to the evidence as to Count I, and this assignment of error is without merit.

The final assignment of error is the trial court erred in refusing to grant the appellant's motion for a mistrial because of the prosecutor's introduction of "societal alarm" in closing arguments to the jury. Having reviewed the remarks, we find no evidence of "societal alarm" and the remarks were within the proper limits of reasonable argumentation. This assignment of error is without merit.

Finding no merit to the appellant's assignments of error, the judgment and sentence of the District Court should be, and hereby is, AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.