22921

The STATE, Respondent v. Ronnie HOWARD, Appellant
(374 S. E. (2d) 284)

Supreme Court

*Chief Atty. William Isaac Diggs,* and *Deputy Chief Atty. Elizabeth C. Fullwood,* of *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attorney Gen. Harold M. Coombs, Jr.,* and *Norman Mark Rapoport,* Columbia, and *Sol. George M. Ducworth,* Anderson, *for respondent.*

Heard April 5, 1988.

Decided Nov. 14, 1988.

TOAL, Justice:

Appellant Ronnie Howard was convicted of murder, and sentenced to life imprisonment. Howard contends the trial court abused its discretion in not declaring a mistrial when a codefendant, while testifying, referred to an unrelated homicide allegedly committed by Howard. Howard also challenges the voluntariness of a statement he gave to the FBI. We affirm Howard's conviction.

## I. MISTRIAL PROPERLY DENIED

At the trial, codefendant Edmond testified generally that Howard coerced him to participate in the murder. Edmond testified that Howard had intimidated him by thrusting a .357 Magnum pistol into his chest and stating, "Shut up, you're going along with this." The solicitor cross-examined Edmond and inquired why Edmond did not escape during the commission of the crime. Edmond responded: "Prior to this incident in December, Howard was involved in a possible homicide which I. . . ." Counsel for Howard immediately objected to the testimony. The trial court then instructed the jury to "disregard anything concerning anything like that." The Court further instructed the jury that Edmond's answer was not responsive to the solicitor's question and was not relevant to the trial.

Shortly thereafter, the solicitor again asked why Edmond could not escape, to which he replied: "Because of prior warnings and because of this previous incident that I was about to go into a few minutes ago." Counsel objected again. The trial court did not renew its curative instruction. Counsel for Howard then moved for a mistrial.

The ordering or refusal of a mistrial is in the discretion of the trial judge, *State v. Lynn*, 277 S. C. 222, 284 S. E. (2d) 786 (1981). This Court favors the exercise of the wide discretion of the circuit judge in determining the merits of such motion in each individual case. *State v. Thompson*, 276 S. C. 616, 281 S. E. (2d) 216 (1981). Among the factors to be considered in ordering a mistrial are the character of the testimony, the circumstances under which it was offered, the nature of the case, and the other testimony in the case. 281 S. E. (2d) at 219. The decision of the judge in denying a motion for a mistrial will not be disturbed unless there has been an abuse of discretion, amounting to an error of law. *State v. Arnold*, 266 S. C. 153, 221 S. E. (2d) 867 (1976).

Howard contends that Edmond's reference to another possible homicide committed by Howard impermissibly placed evidence of other crimes into evidence. Generally, evidence of other crimes is inadmissible to prove the character of the person in order to show that he acted in conformity therewith. *State v. Lyle*, 125 S. C. 406, 118 S. E. 803 (1923). Evidence of other crimes, however, may be introduced to prove

"motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the person charged with the commission of the crime on trial." 118 S. E. at 807. Here, the statements by Edmond concerning other crimes were inadmissible since the statements do not fall into one of the exceptions under *Lyle*. The issue then becomes whether the trial judge cured the improper statements by his instruction to the jury.

This Court addressed the issue of what constitutes a sufficient curative instruction in *State v. Smith*, 290 S. C. 393, 350 S. E. (2d) 923 (1986). There, we reversed the trial court for failure to give an adequate instruction when the solicitor improperly asked the psychiatrist whether he was aware that Smith had refused to make a statement to police officers. The judge asked the jurors if anyone remembered the solicitor's question. When a juror responded affirmatively, the judge told the juror to "forget it" and not to talk to anybody else [about the question]. 350 S. E. (2d) at 924.

Reasoning that the judge's casual remark to "forget" the question did not serve as a curative instruction, we stated: "Great care should be exercised in the 'delicate, difficult and important matter' of instructing the jury to disregard incompetent evidence." *Id.* 350 S. E. (2d) at 924. We also noted that the jury should be instructed to disregard the evidence, and not to consider it for any purpose during deliberations. *Id.*

In the present case, the judge instructed all the jurors to disregard what the codefendant had said. The judge, exercising care not to underscore the codefendant's statement, did not specifically instruct the jury to disregard the statement concerning the homicide. The judge also admonished the jury that the statement "ha[d] nothing to do with this trial." The present case, thus, is distinguishable from *Smith*. In *Smith*, the judge merely inquired whether anybody remembered the question, and then told the one juror who responded to "forget it." The judge's instruction in the instant case far exceeded the casual remark by the judge in *Smith*. The trial judge, therefore, did not abuse his

discretion by not declaring a mistrial because of Edmond's first statement.

The judge, however, failed to give a curative instruction when Edmond mentioned the homicide a second time. Since the statement was improper, and because the judge failed to give a curative instruction, Howard contends that the trial court erred in not declaring a mistrial. The granting or refusal of a motion for a mistrial is a discretionary matter with the trial judge which will not be interfered with on appeal absent an abuse of discretion. *Wilson v. State*, 276 S. C. 609, 281 S. E. (2d) 128 (1981). We find that the judge did not abuse his discretion in failing to declare a mistrial.

Moreover, the record clearly supports Howard's conviction. Howard confessed to the crime.[1] A codefendant testified that Howard suffocated the victim. Physical evidence found in the car Howard rented and used for the commission of the crime also supported the verdict. Likewise, physical evidence found in the apartment where Howard assaulted the victim substantiated his involvement in the crime. Where guilt is conclusively proven by competent evidence and no rational conclusion can be reached other than that the accused is guilty, a conviction will not be set aside because of insubstantial errors not affecting the result. *State v. Livingston*, 282 S. C. 1, 317 S. E. (2d) 129 (1984).

## II. CONFESSION PROPERLY SUBMITTED TO JURY

Howard next contends that a statement he gave to the FBI was not voluntary. He argues that his Fifth Amendment right against self-incrimination, which is protected by the *Miranda* doctrine, was violated because counsel was not present during the custodial interrogation. He also contends that the FBI coerced him into giving a statement by promising to consolidate the punishments for his offenses. In addition to claiming a violation of his Fifth Amendment right

---

[1] For reasons set forth in Part II *infra*, we conclude that appellant's confession was properly admitted into evidence and the issue of its voluntariness properly submitted to the jury.

against self-incrimation, Howard maintains that his Sixth Amendment right to counsel had attached at the time of his interview with the FBI, and was compromised by that interview. We will address Howard's Fifth and Sixth Amendment claims separately.

## A. BACKGROUND

Howard gave a statement to agents from the FBI on October 7, 1985, concerning his involvement in several crimes. The facts leading to the FBI's involvement in the taking of the statement are crucial in determining whether the statement was admissible. Heyward Polk, Howard's probation officer since August 21, 1983, testified that he received a call from a detective in Buncombe County, North Carolina, who informed him that Howard had been arrested and incarcerated there on an armed robbery charge. Mr. Polk travelled to the prison to talk to Howard. Mr. Polk testified that Howard stated that "he wanted to apologize for what had taken place, and [he] had something to tell him." Mr. Polk also testified that Howard stated that Polk would feel "real bad" about what he had done. Mr. Polk stated that he had never requested any information from Howard, but that he voluntarily proceeded to "tell him about everything what [sic] had taken place, namely robberies and homicides," including the murder of the victim in this case. Mr. Polk testified that he did not ask any questions; Howard just "voluntarily gave the information." Mr. Polk also stated that he knew Howard was represented by counsel for the charge for which he was then incarcerated, but did not contact Howard's counsel. Polk suggested that Howard contact the FBI concerning the information he had given Polk. Polk further testified that Howard requested that he contact the FBI.

On October 7, 1985, Mr. Polk, accompanied by FBI agents Brendan J. Battle and Drucilla W. Kurrle, returned to talk with Howard. Agent Battle testified *in camera* that before talking with Howard, he advised him of his Fifth Amendment rights under *Miranda v. Arizona* by reading to him from a form, and instructing him to read the waiver of rights form. Howard indicated that he understood his rights, and subsequently signed a standard waiver of rights

form, and an additional paragraph handwritten by Agent Battle which read:

> "I, Ronnie Howard, have requested through my federal probation officer, Mr. Heyward Polk, to be interviewed by the FBI about my involvement in criminal activities. I do not want the lawyer present who is representing me in Asheville armed robbery charges, and understand that the FBI agents will ask no questions about those charges. Signed, Ronnie Howard."

Agent Battle testified that he was aware that Howard was represented by an attorney on the unrelated charges because he had made that inquiry, but Howard specifically requested to be interviewed without that attorney present. Agent Battle vehemently denied that Howard ever requested that his attorney be present. Agent Kurrle corroborated Agent Battle's testimony. She testified that Howard specified that his attorney not be present during the interview.

Howard also testified concerning the circumstances surrounding the statement. His testimony conflicted with that of Polk, Kurrle and Battle. Howard testified that he talked to Mr. Polk while he was in jail. Of their conversation, Howard stated: "When I started talking to him, I felt kind of guilty because for the past two years, I had been deceiving him, committing a lot of crimes, reporting to probation and everything and I told him about those crimes." Howard denied that he requested the visit from the FBI agents, but stated that Polk indicated that "the best thing you can do is try to get as less time as possible," and "he had friends in the FBI that [he] trusted." Howard also testified that he trusted Polk and believed the FBI would be able to help him because he "was in an incident earlier in Charlotte involving a weapon—possession of a weapon, and he [Polk] got me a lawyer—well, he introduced me to a lawyer that he knew and helped me out of that situation—to keep me from going back to prison because I was on parole." Howard also testified that he requested to talk to an attorney, but was told by Agent Battle that the attorney would only advise him not to talk. Howard denied that he understood the supplemental paragraph which waived his right to counsel.

## B. CUSTODIAL INTERROGATION

The *Miranda* warnings are designed to protect several constitutional rights of an accused, most importantly, the privilege against self-incrimination. In order to assure that an accused's right to remain silent is not compromised during in custody interrogation, *Miranda* requires that the police inform the defendant that "he has a right to consult with a lawyer and to have the lawyer with him during the interrogation." The State has the burden to prove by the preponderance of the evidence that the accused's rights were voluntarily waived. *State v. Washington*, 370 S. E. (2d) 611 (S. C. 1988). The trial court must examine the "totality of the circumstances" surrounding a statement to determine whether the statement is voluntary. *State v. Doby*, 273 S. C. 704, 258 S. E. (2d) 896 (1979). A trial court's decision will not be disturbed absent an error of law. *State v. Atchison*, 268 S. C. 588, 235 S. E. (2d) 294, *cert. denied*, 434 U. S. 894, 98 S. Ct. 273, 54 L. Ed. (2d) 181 (1977).

Since Polk did not give Howard his *Miranda* warnings, the first issue we must address is whether Polk interrogated Howard during his visit to the jail. The United States Supreme Court addressed the issue of interrogation for *Miranda* purposes in *Rhode Island v. Innis*, 446 U. S. 291, 100 S. Ct. 1682, 64 L. Ed. 297 (1980). In formulating a definition of interrogation, the Court pointed out that "the concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." 446 U. S. at 299, 100 S. Ct. at 1688. The Court noted that interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. The Court thus concluded that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Specifically, the Court expanded the term interrogation to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U. S. at 304, 100 S. Ct. at 1691.

In the present case, Polk, as a federal probation officer, visited Howard, his parolee. There is no indication in the record that Polk expressly questioned Howard. Neither Howard nor Polk testified that questioning occurred during this visit. Likewise, we find that Polk's actions were not reasonably likely to elicit an incriminating response from the suspect. Howard, feeling remorseful about his criminal activities, volunteered the information without any solicitation from Polk. Howard revealed the other crimes to Polk because he trusted him, and believed Polk could help him consolidate the charges to reduce the punishment. We conclude that Polk did not interrogate Howard.

The issue then becomes whether Howard invoked or waived his Fifth Amendment right to counsel when meeting with the FBI. The Fifth Amendment right against self-incrimination is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges. *Arizona v. Roberson*, _____ U. S. _____, _____, 108 S. Ct. 2093, 2100-2101, 100 L. Ed. (2d) 704 (1988).

The seminal case for determining whether the right to counsel, once invoked, has been voluntarily waived is *Edwards v. Arizona*, 451 U. S. 477, 101 S. Ct. 1880, 68 L. Ed. (2d) 378 (1981). In *Edwards*, the accused was arrested on several charges, and given his *Miranda* rights at the police station. Edwards acknowledged that he understood his rights, and agreed to be questioned. The accused stated that "he wanted to make a deal," but the interrogating officer advised him that he did not have the authority to make a deal and would need to talk to the county attorney. The accused called the attorney, but changed his mind, and hung up requesting an attorney of his own. The questioning terminated; the accused was returned to jail. Subsequently, two other detectives visited the accused. The accused was told that he had to talk to the detectives. He did, and confessed.

The United States Supreme Court established a bright line test for determining whether the right to counsel, once invoked, had been waived:

> "When an accused has invoked his right to have counsel present during a custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police initiated custodial interrogation, even if he had been advised of that right."

451 U. S at 485, 101 S. Ct. at 1885. The Court further tempered its bright line ruling with the following exception:

> "An accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police."* (Emphasis added.)

451 U. S at 485, 101 S. Ct. at 1885.

In *Oregon v. Bradshaw,* 462 U. S. 1039, 103 S. Ct. 2830, 77 L. Ed. 405 (1983), the United States Supreme Court considered what constituted initiation under the *Edwards* rule. The four justice plurality concluded in *Bradshaw* that "inquiries or statements . . . relating to routine incidents of the custodial relationship would not suffice but that questions which evinced a willingness and a desire for a generalized discussion about the investigation would." 462 U. S. at 1047, 103 S. Ct. at 2836.

Acknowledging that Howard was represented by counsel on another charge at the time he talked with his federal probation officer, we thus conclude Howard was protected from further interrogation unless Howard "initiated further communication, exchanges or conversations with the police." In this case, Polk, who routinely checked on his parolees, visited Howard who was being held in jail. Howard, while talking with Polk, voluntarily confessed to numerous crimes because he felt "real bad about what he had done." Howard then requested, after Polk's suggestion, an opportunity to talk to the FBI. Howard's inquiries concerning talking with the FBI evinced a willingness and desire on his part to talk with the FBI. The record demonstrates that Howard believed the FBI would be helpful to him, and thus he initiated the contact with the FBI through his federal probation officer. Howard also

signed a supplemental statement, *albeit* written by Agent Battle but read to and signed by Howard, whereby he requested through his probation officer that the FBI interview him about his criminal activities. Since Howard initiated the contact with the FBI, the exception to the *Edwards* rule applies, and we hold the trial court properly admitted the confession.

We are mindful of the recent United States Supreme Court decision in *Arizona v. Roberson*, ＿＿ U. S. ＿＿, 108 S. Ct. 2093, 100 L. Ed. (2d) 704 (1988). The case at bar, however, is factually distinguished from *Roberson.* In *Roberson*, the accused was arrested at the scence of a burglary. After having been advised of his *Miranda* rights, the accused requested an attorney be present before he answered any questions. The officer noted in his report the accused's request for an attorney. Three days later, another officer approached the accused while he was still in custody, advised him of his rights, and interrogated him about a different burglary. The accused had not been provided with counsel at this time. The accused gave an incriminating statement to the officer. The Supreme Court held that the *Edwards* rule applied to bar police-initiated interrogation following a suspect's request for counsel in the context of a separate investigation. The Supreme Court also left intact the exception to the *Edwards* rule, stating: "As we have made it clear, any 'further communication, exchanges or conversations with the police' that the suspect himself initiates, *Edwards v. Arizona*, 451 U. S. at 485, 101 S. Ct. at 1885, are perfectly valid." *Arizona v. Roberson*, ＿＿ U. S. at ＿＿, 108 S. Ct. at 2100-2101.

In the case at bar, Howard was represented by counsel for a separate offense when questioned by the agents from the FBI. Howard initiated the contact with the FBI. On the other hand, in *Roberson*, the accused requested counsel. Counsel was not provided. Roberson did not initiate any further conversations with the police officer. At a time when he still had no counsel, the police came to him for the purpose of custodial interrogation. Here, having initiated the conversation and exchange with the FBI, Howard loses the protection afforded by *Edwards.* The contact by the FBI was perfectly valid.

Howard further asserts that his statement was not voluntarily given because it was induced by the promises of Agent Battle to consolidate all the crimes committed by Howard into one life sentence. At the suppression hearing, Battle testified that he discussed with Howard the possibility of "wrapping up all the charges, but never made any promises." He also stated that "he went out of his way to make sure [Howard] understood that there was no way [he] could guarantee anything." As to the purported promise to consolidate the offenses, Battle insisted that he told Howard that he would inquire whether an arrangement for consolidation could be made, "but [could] not promise one thing." Kurrle corroborated Battle's testimony that no promises were made.

On the other hand, Howard testified at the suppression hearing that Polk, Battle, and Kurrle "led [him] to believe that for all this stuff [he] was involved in, which included homicides, that [he] could look forward to one life sentence." He denied that Battle said that he could not promise Howard anything. Howard stated that he would not have given the statement except for the promises of Polk, Battle and Kurrle.

Our Court addressed the issue of the voluntariness of statements where promises of leniency are allegedly made in *State v. Broome*, 268 S. C. 99, 232 S. E. (2d) 324 (1977). There, we held that a statement induced by a promise of leniency is involuntary only if so connected with the inducement as to be a consequence of the promise. 232 S. E. (2d) at 325. This holding was reiterated in *State v. Peake*, 291 S. C. 138, 352 S. E. (2d) 487 (1987), in which defendant's statement was held involuntary where the investigating officer testified that he told the defendant that if he gave a statement, the State would not ask for the death penalty.

In the present case, however, the investigating officers, Battle and Kurrle categorically denied that they promised to consolidate Howard's offenses. Where there is conflicting evidence as to whether defendant's statement is voluntary, it is, in the first instance, the province of the trial court to determine this factual issue by the preponderance of the evidence. *State v. Washington*, 370 S. E. (2d) 611 (S. C. 1988); *State v. Middleton*, 295 S. C. 318, 368 S. E. (2d) 457 (1988);

*State v. Adams,* 279 S. C. 228, 306 S. E. (2d) 208 (1983). We hold the trial court properly admitted Howard's statement as voluntary because it was not "so connected with the inducement as to be a consequence of the promise."[2]

## C. SIXTH AMENDMENT RIGHT
## TO COUNSEL

The waiver after assertion of rights rules which apply in the *Miranda* area when the defendant, upon receiving the *Miranda* warnings from the police, invokes his right to counsel, also apply to the Sixth Amendment right to counsel. Thus, the Court held in *Michigan v. Jackson,* 475 U. S. 625, 106 S. Ct. 1404, 89 L. Ed. (2d) 631 (1986) that when the Sixth Amendment right to counsel has attached, if police initiate interrogation after a defendant's assertion, at an arraignment or other similar proceedings, of his right to counsel, any waiver of the defendant's right to counsel for that police initiated interrogation is invalid unless the defendant initiates the contact himself. *See also, State v. Howard and Weldon,* 295 S. C. 462, 369 S. E. (2d) 132 (1988). The Supreme Court compared the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination in *Arizona v. Roberson,* \_\_\_\_ U. S. \_\_\_\_, \_\_\_\_, 108 S. Ct. 2093, 2100-2101, 100 L. Ed. (2d) 704 (1988). The Court explained that the "former arises from the fact that the suspect has been formally charged with a particular crime and thus is facing a State apparatus that has been geared up to prosecute him. The latter is protected by the prophylasix of having an attorney present to counteract the inherent pressure of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges." *Roberson,* \_\_\_\_ U. S. at \_\_\_\_, 108 S. Ct. at 2100-2101.

Howard does not contend, nor is it so, that his Sixth Amendment right to counsel had attached at the time he met with the FBI. Howard had not been arraigned

---

[2] The voluntariness of a confession to another murder made by his defendant to the same FBI agents after the initial discussion with Polk was similarly upheld in *State v. Howard and Weldon,* 295 S. C. 462, 369 S. E. (2d) 132 (1988).

nor subjected to other such similar proceedings. When Howard talked with the FBI, he was not facing a State apparatus that had been geared up to prosecute him. Since Howard's Sixth Amendment right to counsel had not attached, the FBI properly interviewed Howard about his past criminal activities.

Assuming, *arguendo*, that Howard's Sixth Amendment right to counsel had attached, Howard also waived that right because he initiated the contact with the police through his federal probation officer as discussed above. *See Michigan v. Jackson,* 475 U. S. 625, 106 S. Ct. 1404, 89 L. Ed. (2d) 631 (1986). (Any waiver of defendant's right to counsel for police initiated interrogation is invalid unless the defendant initiates the contact himself.)

Moreover, Howard's waiver of his Sixth Amendment right to counsel was a knowing and intelligent one. Recently, the Supreme Court, in *Patterson v. Illinois,* _____ U. S. _____, 108 S. Ct. 2389, 101 L. Ed. (2d) 261 (1988), summarized the protections afforded by the Fifth and Sixth Amendments. The Court stated that "an accused who is admonished with the warnings prescribed by *Miranda,* 384 U. S. 436 at 479, 86 S. Ct. 1602 at 1630, 16 L. Ed. (2d) 694 (1966) has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." _____ U. S. at _____, 108 S. Ct. at 2397-2398. Having been apprised of his *Miranda* rights and thus his Sixth Amendment right to counsel, Howard waived his right to counsel knowingly and intelligently.

We thus hold that the trial court properly admitted Howard's statement. Howard's Fifth Amendment right against self-incrimination was not violated by not having counsel present during the FBI interview since Howard initiated the contact with the FBI. The trial court properly concluded after hearing evidence at the suppression hearing that Howard's statement was not improperly coerced by promises of leniency. Moreover, we hold that Howard's Sixth Amendment right to counsel had not attached when the FBI interviewed him. Had it attached, we conclude that Howard waived his right to counsel by initiating contact with the FBI.

Affirmed.

GREGORY, C. J., CHANDLER and FINNEY, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.