23965

The STATE, Appellant/Respondent v. Roger Dewitt (Bill) PRINCE, Respondent/Appellant.

(447 S.E. (2d) 177)

Supreme Court

58

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *William Edgar Salter, III*, Columbia, and *Sol. Dudley Saleeby, Jr.*, Florence, *for appellant/respondent.*

*Ray Coit Yarborough*, Timmonsville, *D. Mark Stokes*, Moncks Corner, and *John P. Gardner, Jr.*, Darlington, *for respondent/appellant.*

Heard April 19, 1993.

Decided Dec. 13, 1993; Reh. Den. Aug. 26, 1994.

*Per Curiam:*

The State appeals a new trial granted to Roger Dewitt (Bill) Prince (Prince) on the charge of accessory before the fact of murder. Prince appeals his convictions for conspiracy and solicitation. We reverse the grant of the new trial motion and remand for sentencing, and affirm Prince's two convictions. This case is a companion to *State v. Charlie Dorn Smith*, 447 S.E. (2d) 175 (S.C. S.Ct. 1993).

## FACTS

On June 10, 1987, the victim (Billy Graham) was found dead in his residence which had been extensively burned. The pathologist performing the autopsy, noting "fire-related injuries," concluded that the cause of death was thermal burns and carbon monoxide poisoning. Investigators were not able to determine the cause of the fire, and Mr. Graham's death was ruled accidental.

In February of 1988, Charles McCray was arrested on charges unrelated to Mr. Graham's death. While in custody, he gave a statement in which he admitted he was paid to murder Mr. Graham. He shot him, stole his pistols, and set his house on fire. While the contents of McCray's statement were admitted only against him,[1] other evidence showed McCray was dropped off near Mr. Graham's home on the night of the murder and later led police to a secreted pipe wrench hidden near the home.

---

[1] The propriety of this ruling is discussed *infra.*

As a result of McCray's statement, the investigation into Mr. Graham's death was reopened and his body was exhumed. The pathologist, upon x-raying the body,[2] found two bullets in the brain tissue which had been overlooked during the initial autopsy.

McCray was subsequently arrested for Mr. Graham's murder. Prince and Charlie Dorn Smith were also arrested and charged with Mr. Graham's murder. Subsequently, McCray, Smith, and Prince were tried jointly for the murder of Mr. Graham. In addition, Prince and Smith were charged with accessory before the fact of murder and conspiracy, and with solicitation of Fred "Peaches" Andrews to commit the murder. McCray was additionally charged with burglary, arson, armed robbery, and conspiracy.

The State sought to establish that Smith and Prince conspired to have Mr. Graham murdered to deter a pending civil lawsuit in which Mr. Graham did not sue them, but did name them as co-conspirators. Mr. Graham had recently won another lawsuit against Smith and Prince in which he received a substantial judgment. Further, Prince held a life insurance policy on Mr. Graham for $500,000.[3]

On the solicitation charges, Andrews testified that both Smith and Prince separately contacted him about hiring someone to commit a murder. Smith approached him on two occasions in January 1987, asking what it would take to have "someone taken care of" for him. Smith never identified his intended victim. Prince also approached Andrews on two occasions in June 1987, shortly before Graham's death. At their second meeting, Prince elaborated that he and Smith needed to have Mr. Graham killed and were prepared to pay $20,000. Prince's statements were not admissible against Smith since the State could not establish a *prima facie* conspiracy as to Smith. *See State v. Sullivan*, 277 S.C. 35, 282 S.E. (2d) 838 (1981).

Andrews testified that he never attempted to procure someone to kill Mr. Graham. This testimony was contradicted by another witness. Shortly after their second conversation and before Mr. Graham's death, Prince advised Andrews that he had hired a local person to commit the murder.

---

[2]The body was not x-rayed during the initial autopsy.

[3]Prince and Graham were business partners when the policy was issued.

After Mr. Graham's death, Andrews saw Prince and Smith on a regular basis, but the murder was never mentioned. In December of 1988, however, after the second autopsy, Prince telephoned Andrews and asked "had I [Andrews] been keeping my god damn mouth shut." Andrews, allegedly fearing for his life, contacted SLED. In January of 1989, Prince again called Andrews, stating that he heard Andrews had contacted SLED. Prince told Andrews that both he and Smith wanted to talk to him. This call was recorded by Andrews.

The State also called Dr. Morris Anderson, a personal friend of Mr. Graham's. Dr. Anderson testified that, shortly before Mr. Graham's death, Prince called him [Anderson] and stated: "Mr. Graham was going to be killed if he didn't change what he was doing . . . if you [Anderson] have any influence with Mr. Graham, then let me get you to use it, because he is playing with fire. . . ."

At the conclusion of the State's case, the trial judge granted a directed verdict to Smith and Prince on the charge of murder but denied Prince's motions on the charge of accessory before the fact of murder and conspiracy.

At the conclusion of the trial, the jury returned the following verdicts:

*Defendant Prince*
— guilty of accessory before the fact of murder;
— guilty of solicitation;
— guilty of conspiracy.

*Defendant Smith*
— guilty of accessory before the fact of murder;
— guilty of solicitation;
— acquitted of conspiracy.

*Defendant McCray*
— acquitted of murder;
— acquitted of arson;
— acquitted of armed robbery;
— guilty of burglary;
— guilty of conspiracy.

The trial judge granted posttrial motions of Prince and Smith for new trials on the charges of accessory before the fact of murder, from which the State appeals. Prince appeals his convictions for solicitation and conspiracy.

## ISSUES

### A. *STATE'S APPEAL*

Was Prince entitled to a new trial for accessory before the fact of murder?

### B. *PRINCE'S APPEAL*

1. Was Prince entitled to a directed verdict on accessory before the fact of murder?
2. Was Prince entitled to a directed verdict on conspiracy?
3. Was Prince entitled to a directed verdict on solicitation?
4. Is the common law offense of solicitation viable in South Carolina?
5. Was prince entitled to a mistrial based upon Co-defendant Smith's closing argument?
6. Was Prince entitled to severance?
7. Was Prince entitled to a new trial based upon after-discovered evidence?

## DISCUSSION

### A. *STATE'S APPEAL*

The State argues that the trial judge abused his discretion in granting a new trial on Prince's conviction for accessory before the fact of murder. We agree and reinstate the conviction.

Upon completion of the State's case, Prince moved for directed verdict on the accessory charge. The motion was denied. However, after the jury returned its verdict, the judge granted Prince's new trial motion for accessory on the ground that the evidence was insufficient to establish that some principal committed the offense of murder.

It is well-settled that the grant or refusal of a new trial is within the discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of that discretion. *State v. Simmons*, 279 S.C. 165, 303 S.E. (2d) 857 (1983). However, where there is competent evidence to sustain the jury's verdict, the judge may not substitute his judgment for that of the jury. *State v. Miller*, 287 S.C. 280, 337 S.E. (2d) 883 (1985), *appeal after remand*, 289 S.C. 426, 346 S.E. (2d) 705 (1986).

■ A conviction for the crime of accessory before the fact requires proof that the accused (1) either advised and agreed, urged, or in some way aided some other person to commit the offense; (2) was not present when the offense was committed; and (3) that some principal committed the offense. *State v. Farne*, 190 S.C. 75, 1 S.E. (2d) 912 (1939). In *State v. Cox*, 287 S.C. 260, 335 S.E. (2d) 809 (Ct. App. 1985), *affirmed as mod.*, 290 S.C. 489, 351 S.E. (2d) 570 (1986), we held that an accessory may be convicted provided sufficient evidence is presented to establish that *some* principal committed the underlying crime at the behest of the accessory. *See also State v. Massey*, 267 S.C. 432, 229 S.E. (2d) 332 (1976).

■ Prince's statements to Andrews that he was seeking someone to murder Mr. Graham and that, ultimately, he procured a murderer, as well as his threats prior to and subsequent to the murder constitute sufficient evidence that some principal murdered Mr. Graham on behalf of Prince, notwithstanding McCray's acquittal of the murder charges. *State v. Cox, supra.* Further, there was sufficient circumstantial evidence of the other elements of the offense to sustain the jury's conviction of Prince for accessory before the fact of murder. *State v. Farne, supra,; State v. Miller, supra.*

Accordingly, we reverse the granting of a new trial to Prince on the charge of accessory before the fact of murder and remand for sentencing.

## B. *PRINCE'S APPEAL*

### 1. *Accessory Before the he Fact of Murder*

■ Prince argues that he was entitled to a directed verdict on the charge of accessory before the fact of murder. We disagree. It is well-established that, in ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the State. The case should be submitted to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *Brown v. State*, 307 S.C. 465, 415 S.E. (2d) 811 (1992); *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888 (1989).

For the reasons discussed above, the judge properly submitted this issue to the jury. *Brown v. State, supra; State v. Edwards, supra.*

## 2. *Directed Verdict on Conspiracy*

Prince argues that he was entitled to a directed verdict on the conspiracy charge due to insufficient evidence. We disagree.

Conspiracy is defined as the "combination between two or more persons for the purpose of accomplishing a criminal or unlawful object or an object neither criminal nor unlawful by criminal or unlawful means." S.C. Code Ann. § 16-17-410 (1985). Here, Andrews testified that Prince solicited him to find someone to murder Mr. Graham on his behalf and later told Andrews he had found someone else to do the killing. We hold that this is sufficient evidence of conspiracy to withstand the directed verdict motion. *Brown v. State, supra; State v. Edwards, supra.*

## 3. *Directed Verdict On Solicitation*

Prince contends that he was entitled to a directed verdict on solicitation due to insufficient evidence. However, he failed to move for a directed verdict on this charge and, therefore, is procedurally barred from making this argument on appeal. *State v. McLaughlin,* 307 S.C. 19, 413 S.E. (2d) 819 (1992); *State v. Bailey,* 298 S.C. 1, 377 S.E. (2d) 581 (1989). In any case, Prince's conversations with Andrews provided sufficient evidence of solicitation to survive the directed verdict motion. *Brown v. State, supra; State v. Edwards, supra; see O'Kelly v. State,* 196 Ga. App. 860, 397 S.E. (2d) 197 (1990); *State v. Furr,* 292 N.C. 711, 235 S.E. (2d) 193 (1977); 74 Op. Atty. Gen. at 328.

## 4. *Viability of Solicitation*

Prince contends that the trial court lacked subject matter jurisdiction over the crime of solicitation on the ground that the common law offense has been superseded by the codification of accessory before the fact (S.C. Code Ann. §§ 16-1-40 and 16-1-50). Alternatively, Prince argues that, assuming solicitation remains a cognizable crime, it is lesser-included offense of conspiracy. We disagree.

First, Prince contends that the codification of accessory supersedes the common law offense of solicitation in that accessory requires proof of all the elements constituting solicitation.

"Common law offenses are not abrogated simply because there is a statutory offense proscribing similar conduct." McAnich and Fairey, *The Criminal Law of South Carolina*, 39 (2d Ed. 1989). Rather, it is presumed that no change in common law is intended unless the Legislature explicitly indicates such an intention by language in the statute. *Nuckolls v. Great Atlantic & Pacific Tea Co.*, 192 S.C. 156, 5 S.E. (2d) 862 (1939).

Here, solicitation and accessory before the fact of murder are separate offenses. Solicitation is counselling, enticing or inducing another to commit a crime. *State v. Furr, supra;* 74 Atty. Gen. Op. at 328. Although the crimes arose from the same circumstances, the solicitation was complete when Andrews was asked by Prince to find someone to murder Mr. Graham. In contrast, the evidence shows the principal involved in the accessory before the fact of murder charge was a different individual. Under the facts of this case, we do not reach Prince's statutory claim.

As to whether solicitation is a lesser-included offense of conspiracy, the test is whether the greater offense (here, conspiracy) includes all the legal and factual elements of the lesser (here, solicitation). *State v. Suttles*, 279 S.C. 87, 302 S.E. (2d) 338 (1983). While a conspiracy involves the combination of two or more persons, S.C. Code Ann. § 16-17-410 (1985), solicitation contains the additional element of *inducing* another to commit a crime. It is not, therefore, a lesser included offense of conspiracy. *State v. Suttles, supra; see* McAninch and Fairey, *The Criminal Law of South Carolina*, 335-336 (2d Ed. 1989) ("Indeed, because they are also separate from each other, it is certainly conceivable that one could be convicted of solicitation, conspiracy and attempt even though the substantive offense to which they relate is never completed."); *see also State v. Lewis*, 293 S.C. 107, 359 S.E. (2d) 66 (1987) (convictions for conspiracy, solicitation of murder and accessory before the fact of murder sustained on other grounds).

### 5. *Mistrial*

Prince argues that he was entitled to a mistrial based upon a comment made by Smith's counsel in closing argument. We disagree.

In closing, Smith's counsel told the jury that they could not

use McCray's statement against Smith. He further explained:

> I'm sure you will follow your oath and not consider that statement against the Defendant Charlie Dorn Smith. And there is a very good reason for that. This is a situation where we have no way to cross-examine, to test the truthtelling of that individual, who either made the statement or didn't make it, but purportedly made it. And unless someone can come into this court and take the stand and testify against my client, then a statement of another person to someone else is not competent evidence to be considered against him. And we can really understand the reason for that, because any of us, next week, could have someone go to the authorities and make a statement about us and unless that person is willing to come into court and testify about it, it can't be used against us. It should not be used against us. *Now, the Defendant McCray has elected not to take the stand, pursuant*—(Emphasis added).

Thereupon, counsel for both Prince and McCray objected and moved for a mistrial. Prince's counsel contended that this statement prejudiced Prince, who also did not testify at trial. The mistrial motions were denied, but the trial judge stated that he would instruct the jury on a defendant's absolute, constitutional right not to testify.

It is well-settled that the decision to grant or deny a mistrial is within the sound discretion of the trial judge. *State v. Dawkins,* 297 S.C. 386, 377 S.E. (2d) 298 (1989); *State v. Howard,* 296 S.C. 481, 374 S.E. (2d) 284 (1988). Here, there was no abuse of discretion in the denial of the mistrial. The judge ordered Smith's counsel not to comment further on the co-defendants' right to remain silent, and he later gave an explicit instruction on this right. Under these facts, a mistrial was not warranted. *State v. Howard, supra* (a co-defendant's statement concerning another murder possibly committed by defendant did not require a mistrial).

### 6. *Severance*

Prince contends he was entitled to a severance, arguing he was prejudiced by: (1) the publication of co-defendant McCray's statement; (2) the redaction of certain portions of McCray's statement; and (3) the inability to cross-examine Mc-

Cray regarding his statement. We disagree.

This was a capital case and this Court has previously warned that serious consideration should be given to severance motions, especially in capital cases, where confessions are involved. *State v. Howard*, 295 S.C. 462, 369 S.E. (2d) 132 (1988); *State v. Bellamy*, 293 S.C. 103, 359 S.E. (2d) 63 (1987). A review of the facts of *Howard* and *Bellamy* shows that in these cases the Court was concerned with the constitutional, evidentiary, and fairness problems arising from situations where a non-testifying co-defendant's statement which implicates another co-defendant was either inadmissible, or unfairly redacted. There is no such problem here, however, since McCray's redacted statement was not inculpatory of Prince.[4] Further, the judge repeatedly limited the jury's consideration of McCray's redacted statement to the issue of McCray's guilt or innocence.[5] *See State v. Harvey*, 253 S.C. 328, 170 S.E. (2d) 657 (1969); *State v. Chaffee*, 285 S.C. 21, 328 S.E. (2d) 464 (1984), *cert. denied*, 471 U.S. 1120, 105 S.Ct. 2370, 86 L.Ed. (2d) 268 (1985). This case does not present the problems found in *Howard* and *Bellamy*.

Prince's third claim is that the denial of his severance motion denied him the right to cross-examine McCray.

In *State v. Crowe*, 258 S.C. 258, 188 S.E. (2d) 379 (1972), this Court held: "[t]he fact that the refusal to sever resulted in the failure of [defendant] Crowe to have his co-defendant testify in his behalf did not constitute reversible error. The record fails to show that [co-defendant] Wright would testify if a separate trial were granted or that his testimony would exculpate the co-defendant Crowe." *Id.* at 267, 188 S.E. (2d) at 383. Here, as in *Crowe*, there is no showing that co-defendant McCray would have testified favorably to Prince had a severance been granted.

Prince has failed to show any abuse of discretion or resulting prejudice from the joint trial. *State v. Crowe, supra.*

---

[4] To the extent any redactions were relevant to Prince's rights, the excised parts were arguably inculpatory.

[5] The State argues in brief this ruling was error since McCray's statement should have been admissible against Prince under the co-conspirator exception to the hearsay rule. While this argument raises an interesting issue as to its merits, and as to the State's right to appeal a mid-trial evidentiary ruling, the record shows the State failed to object to the ruling at trial.

### 7. *After-Discovered Evidence*

Prior to oral argument, Prince petitioned this Court for leave to move before the circuit court for a new trial based upon after-discovered evidence. We deny the motion.

Prince contends he has new evidence that Mr. Graham's body was left unattended in an open garage of the funeral home for two days and one night following the first autopsy. He argues that the body could have been tampered with during this period. The alleged new evidence was received from former employees of the funeral home.

In order to obtain leave to seek a new trial based upon after-discovered evidence, an appellant must make a *prima facie* showing before this Court of the following elements:

(1) the evidence is such as will probably change the result if a new trial is granted;
(2) the evidence has been discovered since the trial;
(3) the evidence could not have been discovered prior to trial by the exercise of due diligence;
(4) the evidence is material; and
(5) the evidence is not merely cumulative or impeaching.

*State v. Ford,* 301 S.C. 485, 392 S.E. (2d) 781 (1990).

Here, Prince has failed to establish that this evidence could not have been discovered by due diligence. He attempted to discuss the handling of the body with the funeral home employees prior to trial; therefore, he obviously had some awareness that the body was mishandled. He made no attempt, however, to proffer the testimony of any of the employees at trial. Moreover, there is no showing that he adequately interrogated these employees prior to trial. *State v. Kelly,* 285 S.C. 373, 329 S.E. (2d) 442 (1985).

Accordingly, we deny Prince's petition for a new trial based upon after-discovered evidence. The remaining issue is affirmed pursuant to Rule 220(b)(1), SCACR.

We reverse the order granting a new trial on Prince's conviction for accessory before the fact of murder and remand for sentencing. We affirm Prince's convictions for solicitation and conspiracy.

Reversed in part; affirmed in part.