652 S.E.2d 438

The **STATE, Respondent,**

v.

Tim Wayne **ARROWOOD, Appellant.**

No. 4304.

Court of Appeals of South Carolina.

Heard Oct. 10, 2007.
Decided Oct. 17, 2007.

Appellate Defender Robert M. Dudek, South Carolina Commission of Indigent Defense, Division of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, and Assistant Attorney General Shawn L. Reeves, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

ANDERSON, J.

Tim Wayne Arrowood appeals his convictions for first-degree burglary and larceny, arguing the trial judge erred by refusing to suppress Arrowood's statements to police. Specifically, Arrowood contends his statements to police were involuntary and inadmissible because they were induced by promises of leniency. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On January 28, 2004, Dayle Walker reported a toolbox missing from his residence in Campobello, South Carolina. Walker explained he always kept the toolbox in an enclosed porch at the back of his home, and, upon returning from work, he noticed it was missing.

Officer Tim Tucker of the Spartanburg County Sheriff's Department was assigned to investigate the burglary of Walker's toolbox. On February 16, 2004, Tucker met with Arrowood in Rutherford County, North Carolina, where Arrowood was in police custody on unrelated charges. Tucker questioned Arrowood concerning several "trailer thefts and the theft of a Corvette" in Spartanburg County.

A few days later, Tucker and Officer David Oglesby met with Arrowood, who had been transported to the Spartanburg County Jail.[1] Oglesby, an investigator for Cherokee County Sheriff's Department, became involved because Arrowood was under investigation for charges in Cherokee County. On February 18, 2004, Arrowood agreed to accompany Tucker and Oglesby to the scenes in Spartanburg County where Arrowood committed various criminal acts. Tucker had previously advised Arrowood of his *Miranda* rights and Arrowood understood, waived those rights, and signed a pre-interrogation waiver form.

---

1. The record on appeal does not fully explain the circumstances of Arrowood's transfer from Rutherford County, North Carolina to Spartanburg County or the disposition of the charges in North Carolina.

While riding with the officers, Arrowood dictated the following statement to Oglesby:

A few weeks ago me and Curtis Mason were riding around in Curtis Mason's truck. He pulled into a drive off highway—just drive off highway just across I-26. Curtis pulled up to the side of the house and we got out and got a big red toolbox off the back porch and we put it in Curtis' truck and left. Curtis took me back home. Curtis left the toolbox at my house on Sandy Clay Road. Curtis came back and later got the toolbox.

In addition, Arrowood read and signed the following statement:

I have read this statement consisting of one page and I swear or affirm the statement that I [have] just given is the truth and nothing but the truth, so help me God. I also swear this statement was given freely and voluntarily, and I have received a copy of this statement.

A grand jury indicted Arrowood for burglary in the first degree and larceny.

Despite attesting that his first statement "was given freely and voluntarily," Arrowood contends his statements were induced by promises of leniency made by Officer Tucker. The trial judge conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to determine the voluntariness of Arrowood's statements. Arrowood testified that in Rutherford County, Tucker "said I got you for the Corvette but if you'll give me the Corvette up, I will get these charges up here dropped and have you brought back to South Carolina." Arrowood alleged that in Spartanburg County, "[Officer Tucker] told [Arrowood] if [Arrowood] would help him, he would help [Arrowood]" by getting "all of [Arrowood's] charges [to] run concurrent" and having "the charges in North Carolina [dropped]." Arrowood claimed Oglesby told him the officers would "put all of [Arrowood's] bonds together and put it in one cap" if Arrowood "helped" in the investigation. Purportedly, Oglesby related this same information to Arrowood's sister a day or two later.

Contrary to Arrowood's contentions, Tucker and Oglesby professed neither officer promised Arrowood anything for his statements. Indeed, in the *Denno* hearing Tucker indicated:

Q: Now, during this time at jail, did y'all make promises to [Arrowood]?

A: No, sir.

Q: Did you threaten [Arrowood] in any way?

A: No, sir.

On direct examination Oglesby averred:

Q: Were any promises made to [Arrowood]?

A: No, sir.

Q: Either about Spartanburg charges or Cherokee charges?

A: No, sir. I can assure you not from Cherokee County.

Q: Okay. Did you hear Detective Tucker make any promises?

A: No, Sir.

Additionally, Tucker declared neither he nor Oglesby coerced Arrowood into giving a statement. Oglesby's testimony corroborated Tucker's:

Q: Did either one of you coerce [Arrowood] in any way?

A: No, Sir.

Q: Did [Arrowood] ultimately give a written statement?

A: Yes, sir, [Arrowood] did.

Tucker explained he may have made the following statement to Arrowood during a portion of the interrogation and prior to the challenged statements:

If I told him I could help him that would mean that I told him it would be in the courtroom if he cooperated. That would be the only thing, that if I ever told him anything that that would be what I would tell him that I would say Timothy Wayne Arrowood cooperated with police in his cases.

On cross-examination, Oglesby maintained he did not discuss bonds with Arrowood:

Q: Do you remember any discussion with Mr. Arrowood about a bond?

A: I don't discuss bonds.

Q: Never?

A: That's up to the magistrate's office and the solicitor's office.

Under cross-examination before the jury, both Tucker and Oglesby avowed they did not promise Arrowood leniency. The officers acknowledged they only offered to speak on Arrowood's behalf to confirm that Arrowood cooperated with their investigation.

Arrowood moved to have his statements to police suppressed, alleging they were induced by promises of leniency. The trial judge denied Arrowood's motion, leaving the determination of the statements' voluntariness to the jury. Specifically, the trial judge ruled:

Based on everything that I heard, the totality of the manner in which the statements were made and they were given, I'm going to find that the statements were freely and voluntarily made. I'm going to allow the statements to be admitted. Now, whether or not, you know, the jury can still consider the statements and find that they do not—and give them very little weight, but I will allow it to be admitted.

The jury returned a verdict of guilty, and the trial judge sentenced Arrowood to life imprisonment for burglary and five years of imprisonment for larceny.[2]

## STANDARD OF REVIEW

The trial judge determines the admissibility of a statement upon proof of its voluntariness by a preponderance of the evidence. *State v. Washington*, 296 S.C. 54, 55, 370 S.E.2d 611, 612 (1988); *State v. Smith*, 268 S.C. 349, 354, 234 S.E.2d 19, 21 (1977). If admitted, the jury determines whether the statement was freely and voluntarily given beyond a reasonable doubt. *Washington*, 296 S.C. at 55–56, 370 S.E.2d at 612.

Factual conclusions as to the voluntariness of a statement will not be disturbed on appeal unless so manifestly erroneous as to show an abuse of discretion. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006); *State v. Von*

---

2. Prior to trial, the State served a notice of a life sentence pursuant to section 17–25–45 of the South Carolina Code (1976) because of Arrowood's prior burglary convictions.

*Dohlen,* 322 S.C. 234, 242, 471 S.E.2d 689, 695 (1996); *Reed v. Becka,* 333 S.C. 676, 685, 511 S.E.2d 396, 401 (Ct.App.1999). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Id.; State v. Douglas,* 367 S.C. 498, 626 S.E.2d 59 (Ct.App.2006) *cert. granted* June 7, 2007; *State v. Preslar,* 364 S.C. 466, 472, 613 S.E.2d 381, 384 (Ct.App.2005). Accordingly, the appellate courts are "bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law." *Reed,* 333 S.C. at 685, 511 S.E.2d at 401 (citing *State v. Amerson,* 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993)). When reviewing a trial judge's ruling concerning voluntariness, the appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence. *State v. Saltz,* 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001).

### *LAW/ANALYSIS*

■ Arrowood argues the trial judge erred in refusing to suppress his statements to police because the statements were induced by promises of leniency, rendering them involuntary and inadmissible. We disagree.

■ The process for determining whether a statement is voluntary, and thus admissible, is bifurcated; it involves determinations by both the judge and the jury. First, the trial judge must conduct an evidentiary hearing, outside the presence of the jury, where the State must show the statement was made voluntarily by a preponderance of the evidence. *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). If the statement is found to have been given voluntarily, it is then submitted to the jury, where its voluntariness must be established beyond a reasonable doubt. *State v. Washington,* 296 S.C. 54, 56, 370 S.E.2d 611, 612 (1988).

■ A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his or her rights under *Miranda v. Arizona,* 384 U.S. 436, 498–99, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966). *See also State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001). If a suspect is advised of his *Miranda* rights, but chooses to make a statement, the burden is on the State to prove by a preponderance of the evidence that his rights were voluntarily waived. *Saltz*, 346 S.C. at 136, 551 S.E.2d at 252; *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990); *Washington*, 296 S.C. at 54, 370 S.E.2d at 611.

Where "the evidence conflicts as to whether a defendant's statement is voluntary, it is, in the first instance, the province of the trial court to determine this factual issue by the preponderance of the evidence." *State v. Howard*, 296 S.C. 481, 492–93, 374 S.E.2d 284, 290 (1988); *Washington*, 296 S.C. at 54, 370 S.E.2d at 611; *State v. Adams*, 279 S.C. 228, 235, 306 S.E.2d 208, 212 (1983). The trial judge's determination of the voluntariness of the statement must be made on the totality of the circumstances, including the background, experience, and conduct of the accused. *Saltz*, 346 S.C. at 136, 551 S.E.2d at 252; *Rochester*, 301 S.C. at 200, 391 S.E.2d at 247; *Howard*, 296 S.C. at 488, 374 S.E.2d at 288; *State v. Linnen*, 278 S.C. 175, 179, 293 S.E.2d 851, 853–54 (1982); *State v. Rabon*, 275 S.C. 459, 462, 272 S.E.2d 634, 636 (1980). "In order to secure the admission of a defendant's statement, the State must affirmatively show the statement was voluntary and taken in compliance with *Miranda*." *State v. Middleton*, 288 S.C. 21, 25, 339 S.E.2d 692, 694 (1986).

Once the trial judge determines the statement is admissible, it is up to the jury to ultimately find, beyond a reasonable doubt, that the statement was voluntarily made. *State v. Von Dohlen*, 322 S.C. 234, 243, 471 S.E.2d 689, 695 (1996); *State v. Callahan*, 263 S.C. 35, 41, 208 S.E.2d 284, 286 (1974).

A statement "may not be extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of improper influence." *Rochester*, 301 S.C. at 200, 391 S.E.2d at 247 (citing *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976) (brackets in original)). Moreover, "a statement induced by a promise of leniency is involuntary only if so connected with the inducement as to be a consequence of the promise." *Saltz*, 346 S.C. at 136, 551 S.E.2d at 252. *See also*

*State v. Peake*, 291 S.C. 138, 139, 352 S.E.2d 487, 488 (1987); *State v. Broome*, 268 S.C. 99, 232 S.E.2d 324 (1977). The pertinent inquiry is, as always, whether the defendant's will was "overborne." *Von Dohlen*, 322 S.C. at 244, 471 S.E.2d at 695.

In *State v. Peake*, the defendant was convicted of murder and sentenced to life imprisonment. 291 S.C. at 138, 352 S.E.2d at 488. Peake appealed, arguing the trial judge erred in admitting a statement Peake made while in police custody. The Court found an investigating officer induced Peake's statement by promising the State would not seek the death penalty. *Id.* At the suppression hearing, the investigating officer admitted that he did, in fact, guarantee the State would not seek the death penalty if Peake surrendered his statement. *Id.* The Court ruled the promise of leniency, tendered by an officer in a position of apparent authority, rendered Peake's statement involuntary and inadmissible. *Id.*

Contrastively, in *Rochester*, the defendant argued his confession was improperly induced by a polygraph examiner's comment that it would be in Rochester's best interest to tell the truth. 301 S.C. at 199, 391 S.E.2d at 246. The Court found the examiner's statement "[s]tanding alone . . . did not constitute the kind of hope of reward or benefit condemned by this Court in *Peake*." 301 S.C. at 200–01, 391 S.E.2d at 247.

Arrowood asserts his statements were not freely and voluntarily given because they were induced by the officers' promises to "help" as long as he cooperated with the investigation. Arrowood claims the "help" promised was to have the North Carolina charges dropped, secure a low bond, and have other charges run concurrently. Tucker and Oglesby categorically denied making those promises. Instead, the officers insist the only "help" they offered Arrowood was to testify in court that he cooperated with the investigation. Under precedent emanating from South Carolina jurisprudence, the officers' offer to attest to Arrowood's cooperation did not constitute promises of leniency. *See Saltz*, 346 S.C. at 136, 551 S.E.2d at 252; *Von Dohlen*, 322 S.C. at 244, 471 S.E.2d at 695; *Rochester*, 301 S.C. at 200–01, 391 S.E.2d at 247; *Howard*, 296 S.C. at 492–93, 374 S.E.2d at 290; *Peake*, 291 S.C. at 139, 352 S.E.2d at 488; *Broome*, 268 S.C. at 99, 232 S.E.2d at 325. Consequently,

Arrowood produced his statements in the mere "hope" of leniency based on his cooperation, rather than as the consequence of promises.

Unlike the uncontroverted evidence in *Peake,* at the *Denno* hearing Arrowood's testimony challenged the officers' denial that they promised him leniency. The Court encountered similarly conflicting testimony in *State v. Howard.* 296 S.C. at 492, 374 S.E.2d at 289. Howard asserted his statement was involuntary because it was induced by a promise to consolidate all his offenses into one life sentence. 296 S.C. at 492, 374 S.E.2d at 289. At the suppression hearing, the agent allegedly promising consolidation testified he discussed with Howard the possibility of "wrapping up all the charges, but never made any promises." *Id.* at 492, 374 S.E.2d at 290. The agent insisted he told Howard he would explore the possibility of consolidation, "but [could] not promise one thing." *Id.* In holding Howard's statement was properly admitted, the Court emphasized that when evidence of voluntariness is conflicting, the trial judge determines the factual issue by the preponderance of evidence. *Id.*

Here, although Arrowood's testimony completely contradicted the officer's testimony, it was within the trial judge's province to determine the admissibility of the statements by a preponderance of the evidence. The trial judge's determination is not in error if there is any evidence in the record to support it.

## CONCLUSION

We hold the record contains evidence sufficient to support the trial judge's conclusion that Arrowood's statements were freely and voluntarily given under the totality of the circumstances. Accordingly, the admission of Arrowood's statements was not an abuse of discretion. Arrowood's conviction and sentence are

**AFFIRMED.**

THOMAS, J., and CURETON, A.J., concur.